UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| JOHN AND JANE DOE, <br> AS PARENTS, NEXT FRIENDS AND <br> LEGAL GUARDIANS OF MINOR CHILD, J.D. <br><br> Plaintiffs, <br><br> v. <br><br> ST. PAUL'S SCHOOL, <br><br> Defendant. | Civil Action No. 1:16-CV-00225-PB |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S PARTIAL OBJECTION AND CONDITIONAL ASSENT
TO MOTION FOR LEAVE TO PROCEED UNDER PSEUDONYMS**

Defendant St. Paul's School ("the School"), through its attorneys, McLane Middleton, Professional Association, submits this Memorandum of Law in Support of its Partial Objection and Conditional Assent to Plaintiff's Motion for Leave to Proceed Under Pseudonyms.

**I.      Introduction**

The School recognizes J.D. has an interest in protecting her identity. However, Plaintiffs' desire to minimize personal exposure associated with the lawsuit is substantially undermined by the tactics of commencing a national media campaign to prejudice the School and this proceeding while simultaneously seeking court-sanctioned anonymity. Plaintiffs, through their counsel, have planned and pursued a national and local media campaign against the School while seeking a court order to shield them from any effects of the media coverage they are fostering. These conflicting actions cannot fairly be reconciled.

1

Plaintiffs' counsel commenced this lawsuit by carefully planning and executing a national media campaign against the School designed to embarrass the School during its graduation weekend. Counsel filed the complaint minutes before the Clerk of Court's office closed on June 1, 2016, while counsel and/or Plaintiffs or their family simultaneously distributed copies of the complaint to local and national media outlets. The School and its counsel were almost immediately inundated with requests from the media to comment on a complaint that they did not have and that, due to the timing of its filing, would not be a matter of public record until the next day. In the meantime, Plaintiffs, through their counsel, were able to freely attack the School while shrouded in anonymity. It is hard to justify this approach since Plaintiffs' counsel, Silverman Thompson Slutkin & White, LLC (the "Silverman Law Firm") was strongly admonished by the United States District Court for the District of Columbia less than two years ago for engaging in a similar media campaign upon filing a sexual assault complaint on behalf of a pseudonymous plaintiff. *Doe v. Cabrera*, 307 F.R.D. 1, 9 (D.D.C. 2014) ("[C]ounsel for the plaintiff and other attorneys acting on her behalf should have known better than to publicize the plaintiff's case" and "should have remained silent about the case").

Plaintiffs' carefully coordinated media campaign will have a prejudicial effect on the adjudication of this case and prospective jurors. Plaintiffs seek to try this case in public from behind a curtain of secrecy, attacking the integrity and credibility of the School and its officials in the most public manner possible. The use of pseudonyms also prejudices the School during discovery and at trial. The School cannot effectively obtain discovery from third parties without identifying J.D., or her parents, to third-party witnesses. Nor would the School receive a fair trial should Plaintiffs be allowed to try the case using pseudonyms, as jurors might view this as an implicit endorsement by the Court of Plaintiffs' alleged harm.

The School acknowledges that J.D. has an interest in remaining anonymous and does not object to her so proceeding at this time, *provided that* the following conditions are agreed to or ordered: (1) Plaintiffs, their counsel, and others acting on their behalf shall refrain from making any further public statements about this matter or the facts underlying it until the litigation is completed; (2) The School shall be entitled to identify Plaintiffs during the discovery and fact investigation process to third parties and during depositions, and Plaintiffs shall bear the cost of redacting any documents filed with the Court bearing Plaintiffs' names or personally identifiable information; and (3) Plaintiffs shall not proceed under pseudonyms at the trial of this matter. The foregoing steps are necessary to ensure that the proceedings in this matter are fundamentally fair and do not unduly prejudice the School.

## II.     Factual Background

### A.     Plaintiffs Filed The Complaint Minutes Before The Clerk's Office Closed, Disseminated It To News Outlets, And The School Immediately Faced A Barrage Of Media Inquiries Prior To The Complaint Being Publicly Available

Plaintiffs filed the complaint in this matter on June 1, 2016 at 4:12 p.m. Delaney Aff. ¶ 28. The complaint was not a matter of public record until the morning of June 2, 2016, when it was docketed on the Court's electronic case filing system. *Id.* By 4:30 p.m. on June 1, undersigned counsel Michael Delaney had received a voice mail message from Jeremy Blackman, a reporter at the *Concord Monitor*. *Id.* at ¶ 4. Mr. Blackman stated that he received a copy of a lawsuit from Plaintiffs' family, indicated that he knew it was "early," but requested an initial response to the lawsuit on behalf of the School for a story he was writing about the lawsuit. *Id.* It was the first notice undersigned counsel received of this lawsuit. *Id.* at ¶ 5. The School, which was preparing for its graduation weekend just a few days later, had not received notice of the lawsuit. *Id.* at ¶ 7. Attorney Delaney immediately undertook efforts to locate a copy of Plaintiffs' complaint, including a call to the Clerk's office, which had closed at 4:30

p.m., just as Mr. Blackman was leaving his voice mail, and a fruitless search of this Court's ECF system (the Clerk's office did not have the opportunity to post the complaint to the ECF system on June 1 because it had been filed minutes prior to the office's 4:30 close).  *Id.* at ¶¶ 8-9.

While counsel for the School attempted to locate a copy of the complaint in order to inform themselves of Plaintiffs' allegations and allow the School to respond, the media barrage was just beginning.  At 4:43 p.m., Attorney Delaney received an email from Mr. Blackman stating that the *Concord Monitor* "need[ed] to post a story on [the lawsuit] shortly" and that he was "hoping to get a response from you or the school."  *Id.* at ¶ 10.

At about the same time, a reporter from the *Wall Street Journal*, Jennifer Levitz, contacted undersigned counsel Bruce Felmly on his direct work line, asking him to publicly comment on the lawsuit.  At the time of this call, Attorney Felmly's involvement in this matter had only been disclosed to the Silverman Law Firm in connection with a confidential meeting. *Id.* at ¶¶ 12-13.  Attorney Felmly told Ms. Levitz that he did not have a copy of the lawsuit and inquired about the length of the complaint.  She indicated the complaint was 34 pages long, and Attorney Felmly explained his inability to comment on a 34-page complaint that he had not received or read.  Attorney Felmly inquired about how the reporter had been referred to him, and Ms. Levitz told Attorney Felmly she received the complaint from "a source."  Attorney Felmly told her he would need to read the complaint before responding to it.  She did not forward a copy of the complaint to him.  *Id.* at ¶ 15.

Having been informed of the call from the *Wall Street Journal* reporter, Attorney Delaney contacted the Clerk through a direct-dial number and informed the Clerk that he was looking for a copy of the complaint, as the School's counsel was receiving national media inquiries about the lawsuit.  *Id.* at ¶ 16.  The Clerk, who graciously looked into the matter after

most of his staff had left for the day, ultimately told Attorney Delaney that no lawsuit involving the School was a matter of public record at the time of the call and therefore was unable to address whether a lawsuit had been received on June 1. The Clerk recommended that Attorney Delaney contact the Clerk's Office again on the morning of June 2. *Id.* at ¶ 17.

Meanwhile, the media barrage accelerated. At 5:35 p.m., Chelsea Damberg, a producer at *NBC Today*, which describes itself as a "news program that informs, entertains, inspires and sets the agenda each morning for viewers across America," sent an email to the School's Rector:

> Hi Mr. Hirschfeld,
>
> I hope you are well. My name is Chelsea Damberg and I am a producer here at NBC News reaching out on behalf of TODAY. We are gathering on a story for the morning surrounding Jane Doe in the Owen Labrie trial's (sic) newly filed court documents today against St. Paul's school.
>
> I wanted to see if you were interested in taping an interview with us tonight on your response to the documents. If you are not interested in a taped interview, we would be happy to include a statement or comment.

*Id.* at ¶ 18 & Attachment C thereto. By 5:46 p.m., the *Concord Monitor* had published an online story about the lawsuit, indicating that counsel for the School was not available immediately for public comment. *Id.* at ¶ 19.

### B. Plaintiffs' Counsel Made The Media Rounds, Attacking The Character And Credibility Of The School While Extolling Plaintiffs' Character And Credibility

Plaintiffs' counsel, Steven Kelly of the Silverman Law Firm, was meanwhile engaged in extensive media contact, providing live or recorded interviews to several national broadcast news programs and entertainment shows. *Id.* at ¶ 21 & Attachment D. His public statements about the case were also printed by numerous print media outlets. *Id.* at ¶ 21 & Attachment E. Attorney Kelly's comments were prejudicial to the School and this proceeding. For example, Attorney Kelly commented on his expectations, or set the range, for a substantial monetary jury verdict,

telling *Vice Magazine*: "We fully expect this verdict will be on the high side of the verdicts around the country," and referencing a $55 million verdict in another case. *Id.* at ¶ 22. Attorney Kelly also attacked the character, credibility and reputation of the School, the named defendant, and its administrators while simultaneously praising the character, credibility and reputation of the anonymous Plaintiffs. He blamed school officials for promoting a "misogynist culture" at the school in an article published by the *Boston Globe*. In that same article, he described the Plaintiffs thusly: "These are not people who hate St. Paul's School. . .They love St. Paul's School, and that's why they're doing this." *Id.* at ¶ 24 & Attachment G. The Silverman Law Firm also issued a prepared statement on the filing of the complaint on June 1, in which Attorney Kelly made his "misogynist culture" barb. *Id.* at ¶ 25 & Attachment H.

Attorney Kelly then gave an interview to WRKO radio 680AM ("The Voice of Boston") on the morning of June 2, in which he repeatedly referred to the anonymous Plaintiffs "loving" the School, and asserted that this case is not about the money for Plaintiffs, who only want to "help the children" at the School. In the same interview, he again attacked the character of the School and its administration, asserting that the "school culture" is to "blame the victim." *Id.* at ¶ 26 & Attachment I.

It was not until almost 7:00 p.m. on June 1 that undersigned counsel finally received a copy of the complaint through Mr. Blackman. *Id.* at ¶ 20. The complaint became a matter of public record on the morning of June 2, when it was docketed on the Court's ECF system. *Id.* at ¶ 29. Attorneys Delaney and Felmly were not contacted in advance by the Silverman Law Firm nor Attorney Douglas regarding the intention to file the complaint at the end of the day on June 1. *Id.* at ¶ 14. By June 2, over a dozen print and online news stories, magazine articles, and

6

national and local broadcast stories had been published, including in national outlets such as the Wall Street Journal, Huffington Post, the Today Show, and Associated Press. *Id.* at ¶ 27.

**III.     Argument**

It is impossible for the Plaintiffs to reconcile their effort to create the largest media event possible to initiate this litigation with the purported purpose to protect the Plaintiffs from personal identification or embarrassment.  It is not only unfair and creates a one-sided setting for justice to be applied or sought, it is inconceivable that such action would be repeated by counsel when a federal court has already admonished them for such conduct.

Plaintiffs should not be allowed to hide behind a cloak of anonymity and lob attacks on the character, credibility and reputation of the School and its officials while extolling their own motives as virtuous.  Plaintiffs are transparently waging a battle in the court of public opinion as to the parties' character, credibility and reputations for a reason—to advantage their claim and potentially influence the jury without any concern for either the rights of the defendant or the appearance of a fair process.

This campaign prejudices both the School and this proceeding.  It is designed to encourage people to form favorable opinions of the Plaintiffs, begin to value or measure the potential damages verdict they seek, and to discredit the School while withholding information key to assessing the credibility of the Plaintiffs — who they are.  To be clear, the School understands that J.D. has a significant desire in maintaining anonymity at this time.  However, there can be no fundamental fairness in a proceeding in which Plaintiffs receive court-sanctioned anonymity while simultaneously publicly attacking the credibility and character of the School and its officials.  The School also has serious concerns that it would suffer substantial prejudice from the unabated use of pseudonyms in discovery and their use, at all, at trial.  Thus,

recognizing J.D.'s interest in remaining anonymous at this point in the proceedings, the School conditionally assents to the Plaintiffs' motion, provided that Plaintiffs agree to the reasonable measures set forth herein to mitigate the actual prejudice or risk of prejudice for permitting the relief as they seek it.

      A.      **The Court Must Balance The Interests of Plaintiffs, The School, And The Public In Determining Whether Plaintiffs Are Entitled To The Exceptional Relief Of <u>Remaining Anonymous In Public Legal Proceedings</u>**

In federal courts in the United States, the rule is that plaintiffs must bring cases in their own names, a practice which facilitates the openness and transparency of proceedings taking place in public forums. Anonymity is strongly disfavored. Federal Rule of Civil Procedure 10(a) states: "In the complaint the title of the action **shall include the names of all the parties[.]**" (emphasis added). "This requirement, though seemingly pedestrian, serves the vital purpose of facilitating public scrutiny of judicial proceedings and therefore cannot be set aside lightly. Certainly, '[i]dentifying the parties to the proceeding is an important dimension of publicness. The people have a right to know who is using their courts.'" *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 188-89 (2d Cir. 2008). However, in "exceptional" cases, the plaintiff may proceed under a fictitious name. *Doe v. Bell Atl. Bus. Sys. Servs., Inc.*, 162 F.R.D. 418, 420 (D. Mass. 1995). The decision to proceed anonymously rests within the sound discretion of the district court. *Id.* The proponent of the use of a pseudonym bears the burden of demonstrating the need for confidentiality. *Macinnis v. Cigna Grp. Ins. Co. of Am.*, 379 F. Supp. 2d 89, 90 (D. Mass. 2005).

Plaintiffs did not cite to any cases from the Court of Appeals for the First Circuit identifying the criteria to be used in determining whether to allow a litigant to proceed anonymously, and the School has not located any after a search. Other federal circuits that have directly addressed when a party may proceed pseudonymously have set forth non-exclusive lists

8

of factors that district courts should consider. While the specific factors vary somewhat from circuit to circuit, they are all some version of "a balancing test that weighs the plaintiff's need for anonymity against countervailing interests in full disclosure." *Sealed Plaintiff*, 537 F.3d at 189-90 (undertaking thorough review of factors considered by other circuits and noting with approval 10 factors). A court must balance the plaintiff's interest in anonymity against both the public interest in disclosure and any prejudice to the defendant. *Id.*

Given the School's acknowledgement that J.D. has an interest in remaining anonymous, it will not engage in a factor-by-factor analysis and will instead focus on the ways in which the Court can and should ensure that Plaintiffs' use of pseudonyms does not unduly prejudice the School and the fundamental fairness of this proceeding.[1]

### B. Plaintiffs Should Not Be Allowed To Use This Court To Wage A Media Campaign Behind A Cloak Of Anonymity

Plaintiffs' counsel engaged in a coordinated, tactical maneuver to file the complaint in this action so as to maximize media exposure of Plaintiffs' allegations while concealing their identity and depriving the School of a meaningful opportunity to promptly respond to the filing. That conduct cannot continue in any form. Courts look unfavorably upon such gamesmanship in evaluating whether a party is entitled to proceed anonymously. For example, in *Rose v. Beaumont Ind. Sch. Dist.*, the plaintiff, who was 19-years-old at the time of suit, alleged that she had been sexually abused by classmates and employees at her high school when she was a freshman in connection with a "sex club." 240 F.R.D. 264, 264-65 (E.D. Tex. 2007). The court denied plaintiff's motion to proceed anonymously, in part because of her involvement in the media coverage of the case: "After agreeing to tell her side of the story from behind the cloak of

---

[1] The School reserves its right to challenge Plaintiffs' use of pseudonyms should circumstances change or it becomes clear the School is unfairly or unreasonably impacted or disadvantaged by such a process.

9

anonymity, she cannot now complain to the court about the potential for future coverage." *Id.* at 268. *See also*, *Doe v. Colgate Univ.*, 2016 WL 1448829, at *4 (N.D.N.Y. Apr. 12, 2016) (finding that plaintiff's having sought out a reporter weighed against plaintiff's argument that he wished to avoid publicity in pursuing the action, but ultimately allowing plaintiff to proceed anonymously).

Plaintiffs' counsel knows well the disfavor with which courts look at publicizing a lawsuit brought by a party seeking anonymity. In 2014, the Silverman Law Firm was admonished by a federal district court for engaging in a media campaign, similar to that waged here, upon filing a sexual assault complaint on behalf of an anonymous plaintiff. *Doe v. Cabrera*, 307 F.R.D. 1, 9 (D.D.C. 2014). Attorney Kelly appeared in that case, and, like here, made the media rounds shortly after filing the complaint. For example, in a story published by the Baltimore CBS affiliate, he attacked the defendant as "a danger to others" while describing the anonymous plaintiff as "an educated, very credible young woman" who is not a "gold digger or publicity seeker." Delaney Aff., ¶ 28 & Attachment J.

The court chastised the Silverman Law Firm for this conduct:

> **The Court is deeply concerned and troubled by the public statement made by the plaintiff—presumably with the plaintiff's consent—to the media after the plaintiff filed the complaint. It appears that the plaintiff, her attorney, and others operating on her behalf, are attempting to try her case in the media or gain a tactical advantage through their public statements.** *See, e.g.,* Def.'s Mem., Ex. 9 (Statement on www.abc2news.com) at 2 ("What [the plaintiff] thought was going to be a romantic evening turned into a very violent and brutal attack[.] ... There was forensic evidence that demonstrated injuries that are just inconsistent with the notion of consent [.] ... You do not consent to the type of injuries that are demonstrated in the medical records here." (internal quotations omitted)); *id.,* Ex. 10 (Statement on www.baltimore.cbslocal.com) at 1 ("This is not a situation where we have a gold digger or publicity seeker. This is an educated, very credible young woman."). **Upon the filing of**

> **the complaint, the plaintiff and any counsel representing the plaintiff or otherwise acting on her behalf should have remained silent about the case. Although the Court appreciates zealous advocacy, counsel for the plaintiff and other attorneys acting on her behalf should have known better than to publicize the plaintiff's case.**

*Cabrera*, 307 F.R.D. at 9 (emphasis supplied). In light of this tactical plan being admonished in 2014 in almost identical circumstances, how can it be that counsel again executed this one-two punch of anonymity and massive media selling in this case?

While the Court ultimately allowed the plaintiff in *Cabrera* to proceed under a pseudonym,[2] it nevertheless ordered: "[T]he parties, their counsel, and others acting on their behalf, shall refrain from making any further comments to the media about this case or otherwise contributing to further media coverage about this matter." Sept. 10, 2014 Order, Dkt. No. 18 in Case No. 1:14-cv-01005, attached hereto as <u>Exhibit 1</u>. This is exactly the relief, or assurance from the Plaintiffs, the School seeks as a condition to its assent to Plaintiffs' request to use pseudonyms. Just as in *Cabrera*, here the Plaintiffs and their counsel "should have remained silent about the case" upon filing the complaint.[3] Just as in *Cabrera*, fundamental fairness requires that Plaintiffs not be allowed to continue to wage a battle in the court of public opinion from behind a cloak of anonymity. In order to preserve the fairness of this proceeding, the Court here, as in *Cabrera*, should order that the parties, their counsel and others acting on their behalf

---

[2] The court made clear that this was a ruling it could revisit as the case proceeded. *Cabrera*, 307 F.R.D. at 10 n.16 ("This ruling should not be read to suggest that the Court may not reverse its position on anonymity should circumstances change, warranting a different result. In that regard, counsel and the parties themselves should appreciate that the Court will not tolerate attempts to gain an advantage through the use of the media, including social media. Therefore, should the parties, their counsel, or others acting on their behalf, cause further *unnecessary* dissemination of public comment about this case, the Court's position on the plaintiff's anonymity, both pretrial and at trial, may change.").

[3] It is not known whether the timing of the media campaign in *Cabrera* was orchestrated as it was here to result in defendant's counsel having no opportunity to even see the complaint before the publicity campaign was launched.

refrain from further commenting to the media about the case or its underlying facts or otherwise contributing to further media coverage about this matter.

   C.  <u>The School Should Be Allowed To Identify Plaintiffs During Discovery</u>

Courts have routinely recognized that defendants are entitled to identify a pseudonymous plaintiff during discovery in order to avoid prejudice. *E.g.*, *Doe v. Rose*, Case No. CV-15-07503-MWF-JC at 5 (C.D. Cal. June 17, 2016) (attached as <u>Exhibit 2</u>) (allowing plaintiff who brought civil sexual assault complaint to proceed anonymously, but allowing defendant to use plaintiff's name for purposes of third-party discovery); *Doe v. Evans*, 202 F.R.D. 173, 176-77 (E.D. Pa. 2001) (granting plaintiff in sexual abuse case against police officers use of pseudonym, but allowing defendants to disclose name to third parties for discovery purposes). The School would be prejudiced if it were prohibited from identifying Plaintiffs during discovery. It would be impossible for the School to conduct third-party discovery without identifying Plaintiffs. The School could not send comprehensible subpoenas about this case to third parties for documents or testimony (*e.g.*, "Please produce all of your communications with *J.D.* relating to her time at the School."). The School would also be hamstrung in conducting its own investigation if it were not allowed to identify Plaintiffs in communications with potential third-party witnesses so as to inform them about the basics of the case, such as who the principal actors are.

Thus, any order allowing the Plaintiffs to use pseudonyms should explicitly provide that the School can identify Plaintiffs to third parties for purposes of discovery. The order should indicate that the School may do so in both formal (*e.g.*, subpoenas) and informal (interviews with potential fact witnesses) third-party discovery or fact investigation in connection with this matter. The School—and witnesses—should also be allowed to identify the Plaintiffs during depositions. It is intolerably unnatural for witnesses to use pseudonyms while giving testimony.

12

The witnesses should be focused on providing truthful testimony to the best of their recollection, not on using a pseudonym with which they are unfamiliar.  Further, deposition transcripts may end up being used at trial, either as evidence or for impeachment.  The jury should not hear testimony in which Plaintiffs are identified by pseudonyms, as they might take it as implicit Court approval of Plaintiffs' alleged harm.  *See* Section III.D., *infra*.

Finally, the School will likely need to publicly file with the Court, throughout the course of the litigation, deposition transcripts or other materials with Plaintiffs' names or other personally identifiable information.  The cost of redacting Plaintiffs' names and personally identifiable information should be borne by Plaintiffs, who are the ones who seek the exceptional relief of remaining anonymous in this public proceeding.

D.     Plaintiffs Should Not Be Allowed To Use Pseudonyms At Trial

Courts generally recognize that the public interest in open trials and the potential prejudice to defendants outweighs the plaintiff's interest in remaining anonymous at trial.  Thus, even where courts have allowed plaintiffs to proceed under pseudonyms prior to trial, those courts generally prohibit the use of pseudonyms at trial.  In *Cabrera*, for example, the court allowed plaintiff to proceed under a pseudonym, but recognized that the balance of interests shifts at trial:

> It is not difficult to appreciate that jurors may infer that the Court has an opinion about the harm the plaintiff has allegedly suffered by its decision to permit the Court to conceal her true identity.  The Court cannot afford the plaintiff that potential advantage at the expense of defendant, who also deserves a fair trial.

*Id.* at 10 n.15.  Thus, the Court ruled that the plaintiff could not use a pseudonym at trial, should the matter reach that stage.  *Id.* at 10.  *See also*, Ex. 2, *Doe v. Rose* at 6 ("The Court further notes that Plaintiff's anonymity could significantly prejudice Defendant Rose if this action were to progress to trial.  Indeed, the jury may interpret the Court's permission for Plaintiff to conceal

13

her identity as a comment on the harm Defendants allegedly caused."); *E.E.O.C. v. Spoa, LLC*, Civ. No. CCB-13-1615, 2013 WL 5634337, at *3 (D. Md. Oct. 15, 2013) (allowing plaintiff in sexual assault case to remain anonymous in pleadings, motions, docket entries and written materials filed in court, but requiring her to appear under her legal name in open court).

The same concerns identified by these courts are present here. If this Court allowed Plaintiffs to use pseudonyms at trial, the jury would likely interpret it as an implicit endorsement of the validity of Plaintiffs' claims and the harms they allege they suffered. This will greatly prejudice the School and result in an unfair trial, one which would be slanted towards Plaintiffs from the start due to the court-sanctioned protection afforded only to them. Allowing Plaintiffs to proceed under pseudonyms during the pretrial portion of this matter, subject to the limitations described herein, while requiring that Plaintiffs use their legal names at trial, strikes the proper balance between protecting Plaintiffs' privacy interests, the School's right to a fair trial, and the public's interest in transparent proceedings.[4]

## IV. Conclusion

For the reasons stated herein, the School conditionally assents to the Plaintiffs' Motion for Leave to Proceed Under Use of Pseudonyms, subject to the conditions set forth herein and in the proposed order the School is submitting with its Partial Objection and Conditional Assent.

---

[4] Further, by the time this matter reaches trial, J.D. will no longer be a minor. She turns 18 this fall. Courts have found that whether a plaintiff is a minor at the time of the proceedings is a factor to consider in balancing the interests of the different parties and the public when determining whether to allow a plaintiff to use a pseudonym. *Rose v. Beaumont Ind. Sch. Dist.*, 240 F.R.D. 264, 269 (E.D. Tex. 2007) (denying motion to use pseudonym for 20-year-old female plaintiff who alleged that she had suffered sexual harassment as a 14-year-old at her high school and stating: "Rose, while a minor at the time of the incidents at issue in the case at bar, is no longer a minor….Thus, the concern the courts display for children of a tender age and their vulnerable status does not currently apply to Rose."); *Doe 1 v. Unified Sch. Dist. 331*, Civ. No. 11-1351-KHV, 2013 WL 1624823, at *2 (D. Kan. Apr. 15, 2013) (denying motion to proceed anonymously of early-20s adult plaintiffs who alleged they were sexually abused in high school, stating: "Plaintiffs are now adults.").

Respectfully submitted,

ST. PAUL'S SCHOOL,

By its attorneys,

McLANE MIDDLETON,
PROFESSIONAL ASSOCIATION

Dated: August 11, 2016         By: /s/ Michael A. Delaney
                                  Bruce W. Felmly, NH Bar No. 787
                                  Michael A. Delaney, NH Bar No. 10504
                                  900 Elm Street
                                  Manchester, NH 03105
                                  T) (603) 625-6464
                                  F) (603) 625-5650
                                  bruce.felmly@mclane.com
                                  michael.delaney@mclane.com

Certificate of Service

I certify that, on August 11, 2016, I served the foregoing via ECF electronic transmission in accordance with the Court's Administrative Procedures for ECF to the registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent to those indicated as non-registered participants, if any.

/s/ Michael A. Delaney
Michael A. Delaney, NH Bar No. 10504

11071178