UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| JOHN AND JANE DOE, <br> AS PARENTS, NEXT FRIENDS AND <br> LEGAL GUARDIANS OF MINOR CHILD, J.D. <br><br> Plaintiffs, <br><br> v. <br><br> ST. PAUL'S SCHOOL, <br><br> Defendant. | Civil Action No. 1:16-CV-00225-PB |

## AFFIDAVIT OF MICHAEL DELANEY, ESQ.

Now comes Michael Delaney, being duly sworn and states the following:

1. I am a director with the law firm of McLane Middleton, Professional Association.

2. I am counsel to St. Paul's School ("the School") in this case. I also represented the school in connection with the criminal trial in the matter of *State of New Hampshire v. Owen Labrie*, Merrimack County Superior Court, Docket No. 2014-CR-617. My representation of the School became a matter of public record during the criminal trial in August, 2015.

3. My partner, Bruce Felmly, Esq. also serves as counsel to the School in this case. He did not represent the School in connection with the criminal trial in the *Labrie* matter. When Plaintiffs filed this lawsuit in federal court, Attorney Felmly's representation of the School was not a matter of public record. The School had not disclosed or identified Attorney Felmly as its legal counsel to any third party, except to the attorneys at the law firm of Silverman Thompson Slutkin & White, LLC (the "Silverman Law Firm"), representing Plaintiffs in this case. Attorney

1

Felmly and I had confidential communications with the attorneys at the Silverman Law Firm prior to the filing of the complaint in this matter.

4. On June 1, 2016, at exactly 4:30 p.m., I received a voicemail message from Jeremy Blackman, a reporter at the *Concord Monitor*. (Attachment A, Transcript of Voicemail from Jeremy Blackman, *Concord Monitor*, 6/1/16, 4:30 p.m.). Mr. Blackman stated that he received a copy of a lawsuit from Plaintiffs' family. He expressed uncertainty regarding whether I had seen the lawsuit. He indicated that he knew it was "early," and he requested an initial response to the lawsuit for a story he was writing about the lawsuit.

5. I listened to Mr. Blackman's voicemail within minutes. It was the first notice I received that Plaintiffs had filed a lawsuit on June 1. I did not know the judicial forum in which Plaintiffs had filed the lawsuit generally referenced by Mr. Blackman.

6. Prior to returning Mr. Blackman's call, I made efforts to obtain a copy of the lawsuit.

7. I immediately contacted representatives of the School and learned that neither the School nor its agents had received any notice of the filing of a lawsuit on June 1. The School was in the midst of preparations for its graduation weekend, just a few days away.

8. I then placed a telephone call to the main number at the Clerk's Office at the United States District Court for the District of New Hampshire to inquire whether a lawsuit had been filed. The Clerk's Office had closed for business at 4:30 p.m. precisely when Mr. Blackman had first contacted me by telephone. I was unable to speak to a court clerk after the close of business.

9. I then conducted a search of the federal court's electronic case filing system and found no database entry documenting the filing of a lawsuit regarding the School on June 1.

10. At 4:43 p.m. on June 1, I received an email from Mr. Blackman at the *Concord Monitor* which stated:

> Hi Mike,
>
> I have a copy of a federal complaint filed this afternoon against St. Paul's by the family of Labrie's victim. We'll need to post a story on it shortly, and I'm hoping to get a response from you or the school. Do you have a moment to touch base? I'm at the office (369-3319) or on my cell (xxx-xxx-xxxx).

(Attachment B, Email from Jeremy Blackman, *Concord Monitor*, dated June 1, 2016, 4:43 p.m) (cell number redacted).

11. Mr. Blackman did not attach a copy of the complaint to his email.

12. At approximately this same time, Jennifer Levitz, a reporter at the *Wall Street Journal*, placed a phone call to Attorney Felmly. The *Wall Street Journal* had not contacted me by phone or email. The *Wall Street Journal* did not place a general call to the McLane Middleton law firm, but rather the reporter directly dialed Attorney Felmly. Attorney Felmly received this call before the *Concord Monitor* had published any stories about the lawsuit.

13. At the time Ms. Levitz contacted Attorney Felmly, his involvement in the matter had only been disclosed to the Silverman Law Firm in connection with a confidential meeting.

14. Attorney Felmly and I were unaware prior to the complaint being filed on June 1 that Charles Douglas, Esq. was serving as local counsel to Plaintiffs. Neither the Silverman Law Firm nor Attorney Douglas contacted us in advance regarding the intention to file the complaint at the end of the day on June 1.

15. When Ms. Levitz contacted Attorney Felmly directly, she asked him to comment publicly on the lawsuit filed against the school. Attorney Felmly told her he did not have

3

a copy of the lawsuit and inquired about the length of the complaint. She indicated the complaint was 34 pages long, and Attorney Felmly explained his inability to comment on a 34-page complaint that he had not received or read. Attorney Felmly inquired about how the reporter had been referred to him, and she told Attorney Felmly she received the complaint from "a source." Attorney Felmly told her he would need to read the complaint before responding to it, and the *Wall Street Journal* did not forward a copy of the complaint to him.

16. Attorney Felmly immediately notified me of the inquiry by the *Wall Street Journal*. I then contacted the Clerk of Court using a direct dial number at the Clerk's Office. I advised the Clerk of Court that my firm was receiving national media inquiries about a lawsuit involving the School. I told him I was attempting to obtain a copy of the lawsuit on behalf of the School. Given the unusual circumstances, I inquired whether a lawsuit had been filed with the federal court in Concord, NH, and if so, whether I could receive a copy of it even though no docket report could be located on the electronic case filing system.

17. The Clerk of Court told me that most of his staff had left for the day, but that he would make an effort to investigate my inquiry  A short time later, the Clerk of Court returned my call and advised me that no lawsuit involving the School was a matter of public record at the time of our call. He was therefore unable to address whether a lawsuit had been received on June 1. He recommended that I contact the Clerk's Office again on the morning of June 2. I thanked the Clerk for his courtesy and diligence in entertaining my inquiry after the close of business.

18.     On June 1 at 5:35 p.m., Chelsea Damberg, a producer at *NBC Today,* sent an email to the Rector of the school. *NBC Today* describes itself as a "news program that informs, entertains, inspires and sets the agenda each morning for viewers across America." Ms. Damberg wrote:

> Hi Mr. Hirschfeld,
> I hope you are well. My name is Chelsea Damberg and I am a producer here at NBC News reaching out on behalf of TODAY. We are gathering on a story for the morning surrounding Jane Doe in the Owen Labrie trial's (sic) newly filed court documents today against St. Paul's school.
> I wanted to see if you were interested in taping an interview with us tonight on your response to the documents. If you are not interested in a taped interview, we would be happy to include a statement or comment.

(Attachment C, Email from Chelsea Damberg, *NBC Today*, 6/1/16, 5:35 p.m)

19.     By 5:46 p.m., the *Concord Monitor* had published an online story about the lawsuit, indicating that counsel for the school was not available immediately for public comment.

20.     At 6:46 p.m., after I contacted Mr. Blackman and told him that the lawsuit he was inquiring about was not a matter of public record in federal court, Mr. Blackman forwarded a copy of the complaint to me in response to my request for a copy of the complaint.

21.     On June 1st, Plaintiffs' counsel, Attorney Steven Kelly of the Silverman Law Firm provided live or recorded interviews to several national broadcast news programs and entertainment shows. He also made public statements about the case to numerous print media organizations. A representative list of Attorney Kelly's interviews with news and entertainment shows on June 1 or shortly thereafter is set forth as Attachment D. A

representative list of quotes he made to newspapers and magazines on June 1 or shortly thereafter is set forth as Attachment E.

22. Several of Attorney Kelly's public comments are clearly prejudicial to the school and this adjudicative proceeding. For example, he directly addressed the size of the jury's estimated verdict in this case. Attorney Kelly told Vice Media, LLC, a print magazine and website for news information: "We fully expect this verdict will be on the high side of the verdicts around the country." (Attachment F, Susan Zalkind, "A Lawsuit Could Expose A Culture of Sexual Violence at an Elite Prep School," *Vice Magazine*, 6/2/16). In that context, he reinforced the recent $55 million verdict obtained by plaintiff Erin Andrews in a widely publicized trial. (*Id.*)

23. Attorney Kelly also made critical statements to the *Boston Globe* attacking the character, credibility and reputation of the school, a party to this case, and its administrators. He blamed school officials for promoting a "misogynist culture" at the school. (Attachment G, Olivia Arnold, "Parents of Owen Labrie sex assault victim sue N.H. school," *Boston Globe*, 6/2/16). Misogyny is defined as a "hatred of women." Webster's Third New Int'l Dictionary, Merriam-Webster, Inc. 1444 (2002).

24. In the same *Boston Globe* article, Attorney Kelly offered public statements praising and endorsing the character, credibility and reputation of Plaintiffs. He stated: "These are not people who hate St. Paul's School. . .They love St. Paul's School, and that's why they're doing this." (Attachment G). Simply put, Attorney Kelly has made public statements juxtaposing the characterization of Plaintiffs as lovers of the school with the depiction of the school as a culture that hates women.

25. On June 1, the Silverman Law Firm issued a prepared statement regarding the filing of the lawsuit. A copy of the prepared statement is attached as Attachment H.

26. On the morning of June 2, 2016, Attorney Kelly gave an interview with WRKO radio 680AM, which identifies itself as "The Voice of Boston." In that interview, he repeatedly referred to the anonymous Plaintiffs "loving" the School and asserted that this case is not about the money for Plaintiffs, who he claimed only want to "help the children" at the School. In the same interview, he again attacked the character of the School and its administration, asserting that the "school culture" is to "blame the victim." A transcript of Attorney Kelly's interview with WRKO is attached as Attachment I.

27. On or before June 2, 2016, over a dozen national and local broadcast media stories and print and online news stories and magazine articles had been published.

28. I have grave concerns about the prejudicial effect of this extensive media coverage on prospective jurors in this case. This is not the first time that the Silverman Law Firm and Attorney Kelly have praised their own client and attacked the other side in the press while simultaneously seeking court-sanctioned anonymity for their client. In *Doe v. Cabrera*, 307 F.R.D. 1, 9 (D.D.C. 2014), a federal district court admonished the plaintiff and the Silverman Law Firm for attempting to "try her case in the media or gain a tactical advantage through their public statements." The court cited, among other media appearances, statements Attorney Kelly made to the CBS Baltimore affiliate. Attorney Kelly attacked the defendant as "a danger to others" while describing the anonymous plaintiff as "an educated, very credible young woman" who is not a "gold digger or publicity seeker." Mike Hellgren, *Former Orioles Pitcher Accused of Raping Woman in D.C. Hotel*, CBSBaltimore (Apr. 25, 2014, 8:12 p.m.),

http://baltimore.cbslocal.com/2014/04/25/former-oriole-accused-of-rape/, copy attached hereto as Attachment J.

29.     I later learned that the filing of this complaint was bates-stamped as received by the Clerk's Office on June 1 at 4:12 p.m.  The complaint was not available publicly until docketed on the electronic case filing system by the Clerk's Office on June 2, 2016.

Signed this 11th day of August, 2016 under the pains and penalties of perjury.

                                            /s/ Michael A. Delaney
                                            Michael A. Delaney

STATE OF NEW HAMPSHIRE
COUNTY OF HILLSBOROUGH

On this 11th day of August, 2016, before me,  **Tarey W. Warnock**, personally appeared **Michael A. Delaney**, who swore that the forgoing was true to the best of his knowledge and belief.

In witness whereof I hereunto set my hand and official seal.

                                          /s/Tarey W. Warnock
                                          ~~Justice of the Peace~~/Notary Public
                                          **My commission expires:    11/9/2016**