# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| ALEXANDER AND SUSAN PROUT, as parents, next friends and legal guardians of F.P., a minor, <br><br> Plaintiffs, <br><br> v. <br><br> ST. PAUL'S SCHOOL, <br><br> Defendant. | Civil Action No. 1:16-CV-00225-PB |

## PROPOSED JOINT DISCOVERY PLAN
## FOR ELECTRONICALLY STORED INFORMATION

**I.   PARTIES' AGREED-TO TERMS**

Pursuant to Federal Rule of Civil Procedure 26, Plaintiffs Alexander and Susan Prout, as parents, next friends and legal guardians of F.P., a minor, and Defendant St. Paul's School (collectively, "the Parties" and each a "Party"), by their respective counsel in the above-captioned action, stipulate and agree that the following discovery plan shall govern the search and production of ESI in this matter (the "ESI Discovery Plan").

**A.   SCOPE**

1. This ESI Discovery Plan supplements the Discovery Plan that the Parties submitted to the Court on September 14, 2016, and shall govern the production of electronically stored information ("ESI"), as described in Federal Rules of Civil Procedure 26, 33, and 34.

2. Nothing in this Discovery Plan shall supersede the provisions of any subsequent Protective Order agreed to by the parties or entered by the Court.

3.   The Parties identify the following categories of ESI most relevant to the Parties' claims or defenses in this matter. While this categorical identification is not intended as an exhaustive list of potential materials and shall not be construed to waive a party's right to request additional ESI, or any party's right to object to production, the following represent the categories of ESI most likely to result in the production of information most relevant to the issues in the case to the best of the Parties' knowledge at this time:

- The May 30, 2014 incident between Owen Labrie and F.P. (the "incident"), including but not limited to communications following the incident;

- The School's notification of, investigation of, and response to, the incident;

- The Concord Police Department investigation into the incident;

- The criminal proceedings against Labrie relating to the incident;

- F.P.'s response to the incident;

- F.P.'s decision to return to the School for the 2014-15 academic year;

- The School's conduct vis-à-vis F.P. in connection with her return to the School for the 2014-15 academic year;

- F.P.'s decision to leave the School at the end of 2014;

- F.P.'s treatment records;

- Owen Labrie's conduct, actions, and reputation at the School during his time there;

- The alleged practice known as the "Senior Salute" at the School;

- The concept of "scoring" at the School, as that term is described at the Amended Complaint;

- The alleged existence of a club known as the "Slaymakers";

- The School's policies, practices, and procedures concerning student sexual misconduct;

- The School's policies, practices and procedures governing monitoring student communications for the period of time Labrie was a SPS student;

- F.P.'s text messages and social media to the extent the same contain discoverable information;

- Claimed damages by plaintiffs and F.P.; and

- To the extent not otherwise itemized above, any item relevant to the claims and defenses of the Parties in this matter.

4. The parties disagree on the timeframe that should govern preservation obligations and searches related to these categories of ESI.

- **Plaintiffs' Position:** Unless otherwise specifically identified in this ESI Discovery Plan, the Parties' duty to preserve ESI shall be limited to ESI in the Parties' custody, possession, or control created on or after January 1, 2004, a timeframe Plaintiffs believe to be reasonable and proportional to the claims and defenses presented in this case. The Parties' mutual obligations to preserve and collect the ESI described herein does not preclude either Party from requesting such ESI, or objecting to such production, in the future, nor does it bind the Parties to the timeframes presented in this paragraph if discovery reveals a different timeline would result in the production of discoverable information.

- **Defendant's Position:** E-discovery will be limited to ESI in the Parties' custody, possession, or control created on or after August 1, 2011, which tracks the time period Owen Labrie enrolled at St. Paul's School. In an effort to expedite the discovery process, the Parties agree to initially limit e-discovery to the period of time most likely to contain the most relevant information to this dispute, August 1, 2011 to November 30, 2015. The Parties further agree that they shall preserve, but neither collect nor produce, ESI created between January 1, 2011 through the present. The Parties reserve the right to request such ESI in the future and reserve the right to object to such production.

B. **SEARCHING**

1. ESI and unstructured data (*e.g.*, word processing documents created in programs such as Microsoft Word, spreadsheets created in programs such as Excel, presentation slides created in programs such as PowerPoint):[1]

    (a) Types of email and unstructured data:

---

[1] Unstructured data refers to free-form data which either does not have a data structure or has a data structure not easily readable by a computer without the use of a specific program designed to interpret the data. It is created without limitations on formatting or content by the program with which it is being created. *See*, the Sedona Conference Glossary.

      (1)    Defendant's email system is Microsoft Exchange.

      (2)    Plaintiffs, at the relevant times, used Microsoft Hotmail Web-Based Email for Susan Prout and G-mail Web-based Email for Alex Prout for personal email relating to this case.

      (3)    F.P., at the relevant times, used MSN Web-Based Email in addition to her SPS email for email.

      (4)    Defendant's non-email electronic documents are stored on two document servers. Individual administrators, faculty, staff and students may also store electronic documents off the server and on the hard drives of personal devices.

(b)    Which unstructured data will be searched?

      (1)    The Parties disagree on the scope of what will be searched in the first instance.

- **Plaintiffs' Position:** Plaintiffs propose searching any email and related ESI located or otherwise stored on Defendant's central intranet server.

- **Defendant's Position:** Defendant's position is that this is over broad and not proportional. While Defendant may be amenable to running certain search terms, to be agreed on by the parties, over its entire email and document servers, Defendant disagrees that this should be the baseline or standard method of searching for discoverable ESI. Instead, Defendant believes the most productive way to proceed is to search the ESI of the custodians who have the strongest connections to the issues raised in this lawsuit.

      (2)    The email and personal electronic document folders on Defendant's servers of the following individual custodians will be searched, to the extent available:

- Michael Hirschfeld

-4-

- Elizabeth Hirschfeld
- Chad Green
- Colin Callahan
- Jada Hebra
- Kevin Brooks
- Bob Rettew
- Theresa Gerardo-Gettens
- Sandra ("Buzz") Whalen
- Mary Marzelli
- George Pangakis
- Owen Labrie
- F.P.
- Malcolm Salovaara
- Tucker Marchese
- Patrick McCarthy
- O.M.
- A.T.
- Chris Carter
- Victoria Ryder
- Michael Spencer
- Alice Courtright
- Scott Reynolds
- Timothy Pratt
- Custodian of Records for the Disciplinary Committee

The Parties disagree as to whether there should be a search of the entirety of the electronic records of the Clark House, which is Defendant's student health center, including health care professionals and student counselors.

- **Plaintiff's Position:** Plaintiffs propose a search of the custodian's emails and document folders that shall be limited to an agreed-upon targeted search specifically designed to gather information relevant to the claims and defenses in this matter. Moreover, Plaintiffs propose that any documents produced in discovery that resulted from this search will be subject to an agreed-upon HIPPA protective order, the terms of which shall be consistent with 45 CFR § 164.512, presented to, and signed by, the Court.

- **Defendant's Position:** Defendant objects to any generalized search of the entirety of the records of Clark

House, which contain the private, confidential and sensitive medical and counseling records of all students and former students at the school.  Defendant has proposed to include as custodians the two individuals—Buzz Whalen and Mary Marzelli—who provided relevant medical treatment and health counseling to plaintiff F.P.  Defendant does not agree to search all Clark House records with generalized search terms such as "sexual assault" or "rape," as to do so would violate the privacy of St. Paul's School's students and, potentially, that of their families and third parties with no connection to the school.  Defendant is willing, depending on the search terms, to conduct targeted searches of certain records in Clark House if a factual predicate has been shown which supports a reasonable likelihood of the existence of ESI on a particular, discoverable matter.

- The Parties also disagree on listing a current student, H.A., on the list of custodians most likely to have relevant and material ESI.  Defendant believes any request for proportionate discovery related to H.A. should be handled through proposed targeted search requests independent of the general ESI plan.

(3)     Certain other electronic document folders of Defendant may be searched, to be determined as discovery proceeds.

(4)     The email of Plaintiffs, F.P. and Lucy Prout will be searched.

(5)     Plaintiffs', F.P.'s and Lucy Prout's social media accounts (to be identified) will be searched (*e.g.*, Facebook, Twitter, Instagram, etc.).

(6)     Plaintiffs', F.P.'s and Lucy Prout's text messages will be searched.

(7)     In an effort to expedite the discovery process, the Parties agree to initially limit e-discovery to the above-identified custodians and non-custodial data stores, which the Parties believe

are the most likely to contain the most relevant information to this dispute.

(8) The Parties disagree with respect to future preservation obligations that may arise during discovery.

- **Plaintiffs' Position:** Plaintiffs propose the following: "The Parties further agree that they shall preserve, pursuant to their respective ongoing preservation obligations dictated by the applicable Federal Rules of Civil Procedure, but not produce unless and until necessary, ESI from the custodians identified herein, any non-custodial data stores, and any other sources to be identified later to the extent discovery reveals their existence."

- **Defendant's Position:** Defendant objects to this language on the ground that it is vague. Defendant's position is that a subsequent preservation obligation cannot be reasonably triggered without some sort of notice or demand.

(c) Search Protocol

(1) Each Party shall be responsible for generating a searching protocol that it believes in good faith will return a reasonably high proportion of responsive documents.

(2) If search terms are used, within seven (7) days of the execution of this Discovery Plan, the Parties will exchange proposed search terms and strategies that each Producing Party proposes to use to identify responsive ESI.

(3) If a Producing Party has reason to believe that responsive documents are in a language other than English, the Party will include in its proposed search terms any translated search terms it proposes to use. Defendant states that it expects that certain

-7-

        electronic documents, particularly involving some of the students connected to this matter, may be in French.

        (4)    Within seven (7) days of the Parties' exchange of proposed search terms, the Parties will meet and confer to agree on search terms.

        (5)    After the Parties issue requests for production, the Parties will meet and confer within fourteen (14) days of such requests to discuss the need for supplemental search terms and to identify supplemental search terms if any

        (6)    The searches run pursuant to the parties' agreed search terms will be searched by the producing party for documents responsive to requests from the other party and that are otherwise discoverable.

2.    Inaccessible ESI. The parties disagree as to the treatment of inaccessible ESI and their respective proposals are set forth below.

- **Plaintiffs' Proposal:** The Parties recognize that certain data stores may prove to be inaccessible to either party, including, by way of mere example: (a) deleted, slack, fragmented, or other data only accessible by forensics; (b) random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the pertinent operating system; (c) online access data such as temporary internet files, history, cache, cookies; (d) back-up data that is substantially duplicative of data that are more accessible elsewhere; (e) server, system or network logs; or (f) data remaining from systems no longer in use that is unintelligible on the systems in use. In the event a Party, while responding in good faith to a discovery request served upon them, identifies responsive ESI that is not reasonably accessible due to undue burden and/or cost (such as, by way of mere example, its location in one of the data stores discussed in the immediately previous paragraph), as provided under Rule 26(b)(2)(B), that Party shall notify the Party that served the request during the meet and confer described in Paragraph 3(e) of the basis for the inaccessibility, and the undue burden and/or cost that the Party asserts would result. If the meet and confer does not ultimately result in an agreement between the Parties on production related the inaccessible

ESI, the Parties reserve their mutual rights to object, or otherwise engage in appropriate motions practice, on this issue.

- **Defendant's Proposal:** The following types of data stores are presumed to be inaccessible and are not subject to discovery absent a particularized need for the data as established by the facts and legal issues of the case:

    (1)   Deleted, slack, fragmented, or other data only accessible by forensics.

    (2)   Random access memory (RAM), temporary files, or other ephemeral data that is difficult to preserve without disabling the operating system.

    (3)   On-line access data such as temporary internet files, history, cache, cookies, and the like.

    (4)   Back-up data that is substantially duplicative of data that are more accessible elsewhere.

    (5)   Server, system or network logs.

    (6)   Data remaining from systems no longer in use that is unintelligible on the systems in use.

    (7)   Electronic data (e.g. email, calendars, contact data, notes, and text messages) sent to or from mobile devices (e.g., iPhone, iPad, Android, and Blackberry devices), provided that a copy of all such electronic data is routinely saved elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage).

## C.   PRODUCTION FORMAT

1. Unstructured Data

    (a) Document format.

        (1)   Electronically stored information derived from e-mail and other electronically created files (e.g. Microsoft Office files, WordPerfect) will be produced as Bates-labeled single page/multi-page TIFF, as described in Section 1 of Exhibit 1.

        (2)   Each Party reserves the right to object to production of documents in the format specified herein to the extent that

production in such format is impracticable or unreasonably burdensome or expensive.

(3) Each Party reserves the right to request native files for documents that are difficult to understand after they have been produced in the format specified herein or that contain potentially relevant embedded information, and such requests will not be unreasonably denied. Such a request shall be made according to the following protocol.

 (i) The requesting Party shall make any such request as soon as reasonably practical after receiving a document production.

 (ii) The requesting Party shall provide a list of Bates numbers of the documents that it is requesting to be produced in native file format.

 (iii) Within fourteen (14) days of receiving this request, the producing Party will either (i) produce the requested native files to the extent reasonably practicable or (ii) respond in writing, setting forth its position on the production of the requested documents.

 (iv) If the Parties are unable to agree as to the production of the requested documents in native format, the Parties may submit the matter to the Court.

(b) <u>Metadata format</u>. The Parties agree to produce the ESI metadata fields identified in Section 4 of Exhibit 1.

(c) <u>Load file format</u>. The Parties agree on the load file specifications provided for in Section 3 of Exhibit 1.

(d) Documents without standard pagination, such as spreadsheets or desktop databases (such as Microsoft Access) maintained electronically, will be produced in native format.

(e) Audio/Video files maintained electronically, will be produced as native files.

2. Structured Data. The Parties should make reasonable efforts to agree upon the production of data from structured data stores in existing report formats, or report formats that can be developed without undue burden.

3. De-Duplication. A Party is only required to produce a single copy of a responsive document, unless the responsive document contains, for example, handwritten notes, check-marks, or similar notation, in which case the original of such documents must be produced.

(a) Parties may de-duplicate stand-alone documents or entire document families globally using MD5 or SHA-1 Hash[2] value matching. ESI that is not an exact duplicate may not be removed.

(b) Attachments to e-mails shall not be eliminated from the parent e-mail.

---

[2] A Hash value is a mathematical algorithm that represents a unique value for a given set of data or document, similar to a digital fingerprint. *See* The Sedona Conference Glossary.

-11-

   (c) Paper documents shall not be eliminated as duplicates of responsive ESI. To the extent the Parties de-duplicate stand-alone electronic documents against an e-mail attachment, the attachment to the e-mail must be the document that is produced.

 4. Native files. The Parties will make reasonable efforts to ensure that documents produced in native form are decrypted (or that passwords are supplied), but the Parties have no duty to identify encrypted documents prior to production.

**D. THIRD-PARTY ESI**

 1. The Parties have previously identified and exchanged a preliminary list of third parties who likely have possession, custody, or control over ESI relevant to this matter.

 2. A Party that issues a non-party subpoena (the "Issuing Party") is responsible for producing any documents obtained under a subpoena to all other Parties within a reasonably prompt timeframe after receipt of such documents.

 3. If the Issuing Party receives any hard-copy documents or native files, the Issuing Party will process the documents in accordance with the provisions of this Discovery Plan, and then produce the processed documents to all other Parties.

 4. However, any documents the Issuing Party does not intend to process for its own use may be disseminated to all other Parties in the format in which such documents are received by the Issuing Party. If the Issuing Party subsequently processes any such documents, the Issuing Party will produce those processed documents to all other Parties.

 5. If the non-party production is not Bates-stamped, the Issuing Party will endorse the non-party production with unique prefixes and Bates numbers prior to producing them to all other Parties.

**E.    OTHER**

      1.    In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (*i.e.*, paper documents should be logically unitized[3]). In the case of an organized compilation of separate documents – for example, a binder containing several separate documents behind numbered tabs – the document behind each tab should be scanned separately, but the relationship among the documents in the compilation should be reflected in the proper coding of the beginning and ending document and attachment fields. The Parties will make their best efforts to unitize the documents correctly.

      2.    This ESI Discovery Plan shall have no effect on any producing Party's right to seek reimbursement for costs associated with collection, review, or production of documents or ESI.

      3.    All copies of documents produced by the parties, whether original documents were ESI or hard copy, shall be text searchable and OCR text files shall be provided.

      4.    Nothing in this Discovery Plan shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. The Parties do not waive any objections as to the production, discoverability, admissibility, or confidentiality of documents and ESI.

      5.    Nothing in this Discovery Plan is intended or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or third parties to object to a subpoena.

---

[3] Logical Unitization is the process of human review of each individual page in an image collection using logical cues to determine pages that belong together as documents. Such cues can be consecutive page numbering, report titles, similar headers and footers and other logical indicators.  *See* The Sedona Conference Glossary, cited at note 2 *supra*.

6.     Counsel executing this Discovery Plan warrant and represent that they are authorized to do so on behalf of themselves and their respective clients.

## II.     PARTIES' OUTSTANDING DISAGREEMENTS

The Parties propose a conference with the Court to further discuss and resolve the remaining areas of disagreement set forth herein.

| ST. PAUL'S SCHOOL,<br><br>By its attorneys,<br><br>McLANE MIDDLETON,<br>PROFESSIONAL ASSOCIATION<br><br>/s/_____<br>Bruce W. Felmly, N.H. Bar No. 787<br>bruce.felmly@mclane.com<br>Michael A. Delaney, N.H. Bar No. 10504<br>michael.delaeny@mclane.com<br>900 Elm Street, P.O. Box 326<br>Manchester, New Hampshire 03105-0326<br>Telephone: (603) 625-6464<br>Facsimile: (603) 625-5650 | ALEXANDER AND SUSAN PROUT, as parents, next friends, and legal guardians of F.P., a minor<br><br>By their attorneys,<br><br>/s/_____<br>Charles G. Douglas, III N.H. Bar No. 669<br>DOUGLAS, LEONARD & GARVEY, P.C.<br>14 South Street, Suite 5<br>Concord, NH 03301<br>Telephone (603) 224-1988<br>chuck@nhlawoffice.com<br><br>Steven J. Kelly (*admitted pro hac vice*)<br>Steven D. Silverman (*admitted pro hac vice*)<br>Stephen G. Grygiel (*admitted pro hac vice*)<br>Edward P. Parent (*admitted pro hac vice*)<br>Silverman \| Thompson \| Slutkin \| White, LLC<br>201 North Charles Street, Suite 2600<br>Baltimore, MD 21202<br>Telephone (410) 385-2225<br>skelly@mdattorney.com<br>ssilverman@mdattorney.com<br>sgrygiel@mdattorney.com<br>nparent@mdattorney.com |
|---|---|

**EXHIBIT 1**

1. **IMAGES:**
   - Produce documents in Single Page Group IV TIFF files
   - Image Resolution at least 300 DPI
   - Black and White unless color is necessary to understand the meaning
   - File Naming Convention: Match Bates Number
   - Insert Placeholder image for files produced in Native form (see Section 2)
   - Original document orientation shall be retained

2. **FULL TEXT EXTRACTION / OCR:**
   - Produce full extracted text for all file types of ESI (Redacted text will not be produced)
   - Production format: Single text file for each document, not one text file per page
   - File Naming Convention: Match Beg Bates Number

3. **LOAD FILE SPECIFICATIONS:**
   - **Images Load File**: Opticon OPT file
   - **Metadata Load File**: Concordance DAT file with field header information added as the first line of the file. Export using Concordance default delimiters.
   - **Extracted TEXT:** Reference File Path to TEXT file in DAT file
   - **Native Files Produced:** Reference File Path to Native file in DAT file

4. **ESI PRODUCTION METADATA FIELDS:**
   - **BegBates**: Beginning Bates Number
   - **EndBates**: Ending Bates Number
   - **BegAttach**: Beginning Bates number of the first document in an attachment range
   - **EndAttach**: Ending Bates number of the last document in attachment range
   - **Custodian**: Name of the Custodian of the File(s) Produced – Last Name, First Name format
   - **FileName**: Filename of the original digital file name
   - **NativeLink**: Path and filename to produced Native file
   - **EmailSubject**: Subject line extracted from an email message
   - **Title**: Title field extracted from the metadata of a non-email document
   - **Author**: Author field extracted from the metadata of a non-email document
   - **From**: From field extracted from an email message
   - **To**: To or Recipient field extracted from an email message
   - **Cc**: CC or Carbon Copy field extracted from an email message
   - **BCC**: BCC or Blind Carbon Copy field extracted from an email message
   - **DateRcvd**: Received date of an email message (mm/dd/yyyy format)
   - **DateSent**: Sent date of an email message (mm/dd/yyyy format)
   - **DateCreated**: Date that a file was created (mm/dd/yyyy format)
   - **DateModified**: Modification date(s) of a non-email document

-2-

- **Fingerprint**: MD5 or SHA-1 has value generated by creating a binary stream of the file
- **ProdVolume**: Identifies production media deliverable
- **ExtractedText**: File path to Extracted Text/OCR File
- **Redacted**: "Yes," for redacted documents; otherwise, blank

6.  **PAPER DOCUMENTS METADATA FIELDS:**
    - **BegBates**: Beginning Bates Number
    - **EndBates**: Ending Bates Number
    - **BegAttach**: Beginning Bates number of the first document in an attachment range
    - **EndAttach**: Ending Bates number of the last document in attachment range
    - **Custodian**: Name of the Custodian of the File(s) Produced – Last Name, First Name format
    - **ProdVolume**: Identifies production media deliverable

Case 1:16-cv-00225-PB   Document 21-3   Filed 10/21/16   Page 16 of 16