UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

|  |  |
|---|---|
| ALEXANDER AND SUSAN PROUT, <br> as parents, next friends and legal guardians of <br> F.P., a minor, <br><br> Plaintiffs, <br><br> v. <br><br> ST. PAUL'S SCHOOL, <br><br> Defendant. | Civil Action No. 1:16-CV-00225-PB |

## ST. PAUL'S SCHOOL'S MOTION FOR PRETRIAL CONFERENCE
## TO MODIFY SCHEDULING ORDER

St. Paul's School ("the School"), through its attorneys, McLane Middleton, Professional Association, moves this Court for an order modifying the pretrial scheduling order entered by the Court and to schedule a pretrial conference to discuss the parameters of such modifications. In support thereof, the School states as follows:

1. The New Hampshire Attorney General's recent commencement, on July 13, 2017, of a criminal investigation of the School has, from the School's perspective, necessitated modifications to the current pretrial scheduling order and trial notice ("scheduling order"). Dkt. Nos. 19 & 21; 10/28/16 Endorsed Order; 10/28/16 Trial Notice. The School requests that the Court schedule a pretrial conference in the short term to address the scope of requested modifications to the scheduling order, as well as the potential of a new trial date, in a manner that appropriately balances the interests of the School, which is now subject to a parallel criminal investigation into the very same subject matter that forms the basis of Plaintiffs' civil claims herein, with those of the Plaintiffs, who have asserted claims against the School that they seek to

resolve. At the pretrial conference with counsel last fall, the Court indicated that, due to the complexity of the issues in this case, it would be open to the possibility of having further conferences with counsel to address issues that may arise in discovery. The School believes that the criminal investigation presents a situation that falls within such circumstances. Further, as the relief sought herein is within the Court's discretion and deals with scheduling logistics, the School believes a conference with the Court and counsel would provide the best forum to hear the concerns of the parties and address these issues.

**Procedural Background**

2.	Plaintiffs' lawsuit against the School arises from a May 30, 2014 incident in which Plaintiffs allege that F.P. was sexually assaulted by Owen Labrie. Dkt. No. 17, First Am. Compl. at ¶ 2. At the time, F.P. was a freshman and Labrie was a senior at the School. *Id.* at ¶ 1. Labrie was arrested and charged with a number of crimes, including aggravated felony sexual assault and misdemeanor sexual assault. *Id.* at ¶ 121. In August 2015, after a highly publicized trial, a jury convicted Labrie of misdemeanor sexual assault, "certain uses of computer services prohibited," and endangering the welfare of a child.[1] *Id.* at ¶ 130.

3.	Plaintiffs initiated this lawsuit in June 2016. They allege that F.P. was assaulted by Labrie as a result of the "senior salute," which they allege to be a sexual "competition" and "tradition" in which older male students seek out younger female students. *Id.* at ¶¶ 2, 28.[2] Plaintiffs further allege that there was a "culture of 'scoring'" at the School, where "scoring" involved sexual encounters between students. *Id.* at ¶¶ 26-31. Plaintiffs allege that the School

---

[1] Labrie has appealed his convictions to the New Hampshire Supreme Court and the appeal remains pending.

[2] The School denies Plaintiffs' characterizations of the terms "senior salute" and "scoring" as they are used by students at the School. Dkt. No. 18, Ans. at, *e.g.*, ¶¶ 2, 24. At Labrie's criminal trial, F.P., Labrie, and a number of other then-current and former School students testified as to each of their individual understandings of those terms, and those understandings varied.

failed to investigate, correct, and otherwise address "scoring," the "senior salute," and "the openly pervasive environment of sexual harassment" at the School and allege that, as a result, F.P. was sexually assaulted and suffered harm. *Id.* at ¶¶ 139, 147, 154, 159, 167. The School has denied that it is liable for harm F.P. has suffered as a result of Labrie's actions. *See generally*, Dkt. No. 18, Answer.

4.   The parties submitted a proposed Discovery Plan to the Court on September 9, 2016, which, after a status conference with the Court and further status report from the parties, the Court approved and adopted as a pretrial scheduling order on October 28, 2016. Dkt. Nos. 19 & 21; 10/28/16 Endorsed Order. Since then, the parties have exchanged and answered written discovery requests and have exchanged initial, partial document productions. The School has additionally made one substantial production of electronically stored information ("ESI") consisting of thousands of pages of documents and continues to work through the review of significant additional ESI in preparation for production. Based on conversations with Plaintiffs' counsel, the School understands that Plaintiffs' ESI is also being reviewed for production to the School (although the School has not yet received any ESI productions from Plaintiff).

5.   Over the last month or so, the parties pursued the process of arranging for numerous depositions to be taken in this matter. The planning was furthered on a call between counsel on July 10, 2017, when counsel for each side agreed to block out a significant number of dates for depositions in August and September and to work with potential witnesses to finalize dates. The Plaintiffs have requested the depositions of numerous current and former School administrators, faculty, and trustees, including Michael Hirschfeld (the School's Rector since July 2011), Chad Green (the School's Dean of Students at the time of the Labrie incident), Robert Rettew (Labrie's advisor at the School), Jada Hebra (former Vice Rector of School Life

3

and former Vice Rector of Faculty), Archie Cox (member of the School's Board of Trustees since 2012 and its current President), Victoria Ryder (current Teacher of Chemistry), Colin Callahan (Director of the Hargate Gallery at the School who was F.P.'s advisor and Head of House at F.P.'s dorm), George Pangakis (the School's Director of Safety for approximately 13 years), and Dr. Theresa Ferns (the School's current Dean of School Life and formerly a counselor at the School's health center). For its part, the School has been engaged for months in attempting to schedule through subpoena the deposition of Plaintiffs' older daughter, Lucy Prout, who is a material witness in this matter. Numerous objections and challenges to that deposition have been addressed by the School and it had been expected that the deposition would occur in July or August. In sum, the parties are in the midst of, but hopefully were nearing closure on, exchanging document productions and were on the verge of heading into depositions at the time the Attorney General announced its investigation.

**The Attorney General's Investigation**

6. On July 13, 2017, three days after the deposition scheduling call between counsel, the New Hampshire Attorney General's Office (the "Attorney General") publicly announced that, together with the Merrimack County Attorney's Office and the Concord Police Department, it had initiated a criminal investigation into the School. Exhibit 1, 7/13/2017 Dept. of Justice News Release. The Attorney General described the reason for the investigation as follows:

> The investigation has been initiated as the result of a 2017 report concerning sexual assaults by St. Paul's teachers on their students; **earlier information about student sexual conquest rituals such as the "senior salute," a practice which led to the highly publicized arrest, trial and conviction of a St. Paul's student in 2015**; and allegations of a similar ritual reported in June of this year.

*Id.* (emphasis added). The Attorney General stated that its investigation will initially focus on "the issue of whether the School engaged in conduct constituting endangering the welfare of a

4

child, contrary to RSA 639:3; and violations of RSA ch. 642, the Obstructing Governmental Operations chapter of the criminal code." The office will further investigate "any other crimes as dictated by the evidence." *Id.* The School promptly and publicly stated that it will fully cooperate with the investigation.

7. Recent media coverage of the investigation has noted its unusual breadth. For example, the Concord Monitor's recent Sunday edition ran a front-page story stating that the Attorney General's criminal investigation "into St. Paul's School's handling of sexual misconduct allegations over several decades is an uncommon move in New Hampshire…." Exhibit 3, *Scope of St. Paul's Probe Rare in N.H.*, Concord Monitor (July 23, 2017). "The probe…has put the elite boarding school under a microscope, as investigators work to determine what school officials knew about sexual misconduct by both staff members and students, when they knew about it, and how they responded to it." *Id.* Plaintiffs' counsel has been quoted in the media in his role as Plaintiffs' attorney in this case and as the representative of two other young women who allege that they were assaulted at St. Paul's. He notes that the outcome of the investigation may influence the latter's decision to come forward and seek compensation. *Id.* ("If prosecutors were to convene a grand jury in New Hampshire, it would allow St. Paul's victims and officials to speak independently in a closed setting, and may begin the process of 'peeling back the onion,' said attorney Chuck Douglas[.]"). On behalf of the Plaintiffs, he further stated: "[T]hey are pleased the attorney general has stepped up to the plate and shown the courage to take on a very large but secretive institution that needs the light of day….We have long known that this was a pattern and it needs to stop." Exhibit 3, *Attorney General Targets St. Paul's for Handling of Sexual Misconduct Allegations*, Union Leader (July 13, 2017).

8.    The same day that the Attorney General announced the investigation, it also notified the School directly as to the commencement of the investigation. The Attorney General specifically identified the "senior salute" as one reason for the investigation. The School is cooperating and will continue to cooperate with the investigation.

9.    It is a near certainty that some or all of the current and former School administrators, faculty, staff, or trustees whom Plaintiffs seek to depose in this civil matter will meet with and provide information to the Attorney General in connection with and to cooperate with the investigation. The School understands that at least some of these individuals have either retained independent counsel with respect to the investigation or are in the process of doing so.

**The Need to Modify the Scheduling Order**

10.    The School is cooperating and will cooperate with the Attorney General's investigation. However, doing so while at the same time engaging in discovery on the track that is currently set in the scheduling order is not practical. For example, the School's cooperation with the investigation will no doubt involve a number of the School's officials and agents with significant responsibilities in connection with the assembly of information required by the investigators and who are likely to provide direct information in interviews or other testimonial events required by the Attorney General. Given the overlap in subject matter between the Attorney General's investigation and the issues in this civil lawsuit, it is highly likely that these same individuals are the ones Plaintiffs seek to depose in this civil matter. A number of these individuals will be represented by personal counsel, which will require a high degree of cooperation and communication between counsel for the individuals and the School. In summary, the individuals with these responsibilities need to be able to cooperate and speak with

6

the Attorney General's team in the investigation without the tension and conflict inherent in participating in a deposition, which is adversarial by nature, in a parallel civil proceeding.

11. The School does not necessarily seek to postpone all ongoing discovery efforts and believes there are ways in which the parties can proceed with certain discovery without delay. However, due to the broad scope of the Attorney General's investigation, the need for certain of the School's agents to participate therein, and the probable timing or schedule of events, the School believes depositions of such individuals need to be postponed into 2018. The order of depositions should necessarily take into consideration that certain School agents have responsibilities and duties with respect to the investigation. This fact will necessitate modifying the remaining dates in the scheduling order, including the deadlines for expert disclosures (currently September 1 for Plaintiffs and November 1 for the School), summary judgment (currently October 31), and the close of discovery (currently January 15, 2018). It is also the School's request that the Court and parties discuss and plan for an extension of a trial date at a time later in 2018.

12. Plaintiffs were contacted seeking concurrence to this Motion, and they do not concur. Plaintiffs' counsel has expressed a willingness to work with the School on reasonable extensions to allow the School to work through issues relating to the investigation, but as we understand it they do not agree with a broader resetting of the scheduling order. The School believes that the best way to work out the details of scheduling changes, including its request to modify the scheduling order, is via a status conference with the Court.

13. The School seeks a modification of the scheduling order in good faith and not for the purpose of prejudice or delay. The School has been dutifully proceeding with discovery up to this point, consistent with the scheduling order. It has answered Plaintiffs' written discovery

7

requests, produced thousands of pages of documents (including a substantial production of ESI when the School still has received no ESI from Plaintiffs), and was working with Plaintiffs' counsel to arrange depositions at the time the investigation was announced. At the time the Court entered the scheduling order in October 2016, there was no indication whatsoever that a criminal investigation from the Attorney General would be forthcoming. This was an unexpected development for the School, has an enormous impact on the School as it cooperates with that investigation, and the School is promptly bringing the issues raised herein to the Court's attention.

14. The School could not have brought this motion any earlier in the case and seeks to ensure that the parties can engage in full and fair discovery on a reasonable timeline in light of the recently commenced investigation. Further, the School is not waiting until the last minute—days before a hearing or the trial of this matter—to seek a modification of the order. The deadlines for expert disclosures, summary judgment, and the close of discovery have not passed and the scheduled trial date is still months away. The School seeks to modify the scheduling order in an orderly fashion that balances the interests of both parties and the School's current and former agents whose participation is necessary both in the investigation of the School and this civil action.

15. Finally, modifying the scheduling order will not prejudice Plaintiffs. The School is not averse to continuing with certain discovery and does not propose that the case come to a halt. It is probable that the parties can set out an agreement as to the order of certain witnesses, with those heavily engaged in responsibilities related to the criminal investigation being deferred. While some deadlines in the case will be delayed, Plaintiffs have not asserted any

imminent, irreparable harm and do not seek injunctive relief. Such a delay in the resolution of this case will not cause undue prejudice.

16. Pursuant to Local Rule 7.2(a), the School attaches a Civil Form 3 as Exhibit 4. The School notes that, since it is requesting a conference with the Court to establish the particular deadlines, it notes that the new dates are to be determined.

### Local Rule 7.1(a)(2) Statement

As the relief sought is solely within the discretion of the Court, a memorandum of law is not necessary.

### Local Rule 7.1(c) Certification

The School made a good faith attempt to obtain concurrence from Plaintiffs to the relief sought in this motion. Plaintiffs do not concur with the relief sought.

### Local Rule 7.2(c) Certification

Undersigned counsel has informed the School that the relief requested in this Motion may result in the continuance of the currently scheduled trial date.

WHEREFORE, Defendant St. Paul's School respectfully requests that this Court:

A. Grant this Motion;

B. Schedule a pretrial conference with counsel as soon as is practicable for the Court;

C. Modify the current pretrial discovery schedule and trial date pursuant to the result of such conference;

D. Establish dates for the parties to update and inform the Court on the further progress of discovery and developments in connection with the parallel investigation; and

E. Grant the School such other and further relief as is just and necessary.

Respectfully submitted,

ST. PAUL'S SCHOOL,

By its attorneys,

McLANE MIDDLETON,
PROFESSIONAL ASSOCIATION

Dated: August 3, 2017            By:/s/ Bruce W. Felmly
                                     Bruce W. Felmly, NH Bar No. 787
                                     Michael A. Delaney, NH Bar No. 10504
                                     Benjamin B. Folsom, NH Bar No. 268352
                                     900 Elm Street
                                     Manchester, NH 03105
                                     T) (603) 625-6464
                                     F) (603) 625-5650
                                     bruce.felmly@mclane.com
                                     michael.delaney@mclane.com
                                     benjamin.folsom@mclane.com

Certificate of Service

I certify that, on August 3, 2017, I served the foregoing via ECF electronic transmission in accordance with the Court's Administrative Procedures for ECF to the registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent to those indicated as non-registered participants, if any.

/s/ Bruce W. Felmly

10

12564721