IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

ALEXANDER & SUSAN PROUT
p/n/f of F.P., a minor
       Plaintiffs,

             Case No. 1:16-CV-00225-PB

  v.

ST. PAUL'S SCHOOL,

       Defendant.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**PLAINTIFFS' PARTIAL OBJECTION TO DEFENDANT'S MOTION FOR PRETRIAL CONFERENCE TO MODIFY SCHEDULING ORDER**

  Plaintiffs Alexander and Susan Prout as parents, next friends, and legal guardians of their minor daughter F.P., by and through their undersigned counsel, respectfully submit this Partial Objection to Defendant's Motion for Pretrial Conference to Modify the Scheduling Order (the "Motion") [ECF No. 27] filed by Defendant St. Paul's School ('Defendant" or "SPS") and state the following in support thereof.

**INTRODUCTION**

  Plaintiffs agree that a pretrial conference to modify the schedule is in order. Defendant is correct that issues with ESI productions for both parties have resulted in delays that will necessitate extensions to some of the scheduling order's current deadlines. Plaintiffs also agree, and have reiterated to Defendant, that Defendant may be entitled to reasonable scheduling and logistical accommodations in light of the Attorney General's investigation of Defendant.

  However, Defendant seeks far more than mere logistical accommodations. Defendant has proposed what amounts to a virtually complete stay of any deposition discovery involving

1

anyone affiliated with SPS for the months — or potentially years — it may take for the Attorney General to complete his investigation. Put another way, Defendant wants complete immunity from deposition discovery for persons in authority at the school until either the Attorney General's investigation has ended, or until Defendant deems it safe for such depositions to go forward. It is unclear what position Defendant would take if the Attorney General's investigation results in charges, but, in light of Defendant's current position, it seems reasonable to anticipate Defendant would then want yet even further delay in depositions.

Defendant justifies its request for such extraordinary case-delaying relief on two grounds: (1) the scheduling and other burdens the potential deponents will face in light of the two proceedings; and (2) the fact that witnesses affiliated with Defendant will be forced to testify under oath in a civil deposition while under criminal investigation.

Defendant's first concern is overblown. While a select few of Plaintiffs' potential deponents may be involved in SPS' response to the pending criminal investigation, the majority will have little, if any, such role. To the extent that Defendant can demonstrate a scheduling or other issue with a particular deponent, the parties will work to address it. In the unlikely event the parties cannot agree, the Court can decide whether a particular deponent should be temporarily excused from deposition based on that deponent's unique circumstances. Defendant's blanket assertion that all deponents will be too busy with the Attorney General's investigation to be deposed in this case paints with too broad a brush.

Second, that SPS is under criminal investigation is not a valid basis, as a matter of law, for Defendant to refuse to permit depositions in the civil case of anyone who may be involved in the criminal investigation. Both this Court and the U.S. Court of Appeals for the First Circuit have repeatedly recognized that parallel civil and criminal proceedings should go forward absent

extraordinary circumstances not present here. Indeed, the parties have worked cooperatively to deal with the parallel proceedings involving Labrie and those proceedings have not impeded this case.

In short, Plaintiffs remain willing to continue to cooperate with Defendant to address particular scheduling and other concerns but Defendant has presented no valid basis to further significantly delay a case that has been pending for nearly 18 months without a <u>single</u> deposition.

**RELEVANT FACTS**

Defendant's description of the events leading up to the Attorney General's investigation announcement is largely accurate, but a few additional points are worth noting. First, prior to the July 10, 2017 conference call referenced in the Motion, Plaintiffs submitted a list of deponents with dates on which the attorneys taking the depositions were not available. During that call, Defendant's attorney objected to only one person on the deposition list – Jeffrey Taufield, whom Defendant stated it "would not produce." With the exception of Mr. Taufield, the parties agreed to block out days in August, September and October into which each of the requested depositions would be inserted. After the Attorney General's announcement of the criminal investigation, Defendant refused to produce any of the witnesses on the agreed dates and has elected to seek the Court's intervention through the Motion.

Seeking to clarify Defendant's position prior to responding to the Motion, Plaintiffs initiated a conference call on August 10, 2017. Counsel for Defendant claimed that the following depositions <u>must be delayed until the investigation concludes</u> or potentially at some later time when Defendant deems such depositions appropriate[1]:

---

[1] Defendant proposed periodic "check ins" with the Court to provide updates on the status of the Attorney General's investigation and the consequent impact on deposition scheduling in this case.

- **Former employees:** former teacher Bob Rettew, former administrator Chad Green, former vice rector Jada Hebra, former trustee Lucy Hodder;

- **Current employees:** 30(b)(6) designee, Rector Michael Hirschfeld, teacher Victoria Ryder; advisor and head of dorm Colin Callahan, security director George Pangakis, counselor Dr. Theresa Ferns, trustee Archie Cox; and

- **Others affiliated with Defendant:** former student Andrew Thomson, former student Hannah Hirschfeld, current student G.H.,[2] potentially (though Defendant's Counsel was unclear on this position), the Concord Police Department.

With the exception of Labrie and the Slaymakers, this "off limits" list includes <u>every</u> witness Plaintiff seeks to depose. Moreover, because Plaintiffs would be precluded from taking the corporate designee deposition or that of any former or current SPS employee, Plaintiffs would be foreclosed from obtaining discovery that would permit Plaintiffs properly to focus subsequent discovery efficiently and in a way that gives Plaintiffs the fair chance to which they are entitled to develop their proof. Plaintiffs' case would effectively be stayed, apart from document production and a few depositions of less central witnesses. Document production alone will do little to advance this case. Plaintiffs need to question the Defendant's witnesses about those documents.

When asked to clarify what deposition discovery could proceed, as Defendant suggests in the Motion, Defendant's Counsel stated the following depositions could proceed: F.P., Alexander Prout, Susan Prout, Lucy Prout, former school counselor Buzz Whalen, Owen Labrie, and others who will likely assist in Defendant's defense. In other words, Defendant's proposal

---

[2] Defendant's Counsel asserted that there was "another reason" why the depositions of G.H. and Hannah Hirschfeld could not go forward, but did not provide specifics. Defendant asserted no objection when Plaintiffs included these witnesses on the deposition list and these witnesses were included in the blocked dates to which both parties previously agreed.

would allow it to fully develop its defenses while denying Plaintiffs any meaningful opportunity to develop their claims.  The irony in this position is exceeded only by its lack of justification.

## ARGUMENT

Defendant presents two reasons for staying deposition discovery at least "into 2018."[3] Both are unconvincing.

### A. Plaintiffs Will Accommodate Any Legitimate Scheduling Or Logistical Concerns.

Defendant's first justification cites logistical complications arising from the competing demands between the investigation and the civil case. Defendant argues that some, if not <u>all</u>, the deponents will have "significant responsibilities," such as "involvement" in document production, and interviews by investigators, in connection with SPS' response to the investigation. Defendant posits such "involvement" will prohibit the deponents from participating in civil depositions.

But during the period Defendant claims school officials will be overwhelmed with such responsibility, Rector Hirschfeld is planning to attend alumni receptions in Portland, Oregon (August 16); Seattle Washington (August 17); and Fishers Island, New York (August 19).[4] Plaintiffs have repeatedly stated that they will work with Defendant to accommodate any specific scheduling concerns for particular deponents. However, broadly asserting that the investigation will preclude <u>all</u> these witnesses from being deposed is unsupportable. Indeed, former employees, the former trustee, and current teachers at the school, are likely to have minimal roles in the investigation. This argument for indefinite delay is pure artifice.

---

[3] *See* [ECF No. 27] at 7.

[4] *See* www.sps.edu, last visited on August 16, 2017.

Defendant also contends that depositions should be delayed because the deponents already have, or may retain, separate counsel who would seek to quash any deposition subpoenae. Defendant also says there will be "a high degree of communication and cooperation between counsel for the individuals and counsel for the School." *See* [ECF No. 27] at 6-7.

The presence of third-party lawyers is not an automatic impediment to deposition. Deponents routinely retain counsel; in fact, the parties have already worked with counsel for certain witnesses regarding discovery requests and deposition requests. In many cases, retaining counsel makes scheduling and communicating with third-party witnesses easier. If a deponent's attorney raises an actual objection to the deposition, the parties will attempt to resolve the concerns and, as a last resort, will turn to the Court for resolution. Barring all depositions based on a speculative parade of horribles is unjustified.

Indeed, Defendant very actively dealt with the parallel criminal proceedings involving Owen Labrie while this case was pending. As discussed in Plaintiff's previous filings, SPS – an institution with a $730 million endowment – had at least one McLane Middleton lawyer present throughout most, if not all, of Labrie's criminal trial and related proceedings.[5] Moreover, SPS hired a "witness coordinator" to deal with trial witnesses affiliated with the school, and retained The Castle Group – an elite public relations firm that boasts clients including Hewlett Packard, Ocean Spray, and Johnson & Johnson[6] – to direct "communications during and after the proceedings."[7] Why SPS is unable to engage in similar parallel endeavors here remains unexplained.

---

[5] *See* "Trustees Gather on the Grounds for Their Fall Meeting," St. Paul's School, Dec. 21, 2015, *available at* http://www.sps.edu/page/News-Detail?pk=824421&fromId=188886.

[6] *See* "Our Clients," The Castle Group, *available at* http://www.thecastlegrp.com/meet-castle/our-clients.

[7] *See* Note 4 above.

### B. SPS' Witnesses Cannot Refuse To Be Deposed Because Of The Ongoing Criminal Investigation.

Defendant's second primary basis for seeking to effectively stay Plaintiffs' deposition discovery is that the deponents at issue should not be subjected to an "adversarial" civil deposition while "talking to the Attorney General." *See* [ECF No. 27] at 6-7. In essence, Defendant seeks a stay to prevent Plaintiffs from benefitting from adverse inferences that could be drawn from a deponent's assertion of the Fifth Amendment Privilege against self incrimination.[8]

#### 1. Defendant Has Emphatically Denied Any And All Wrongdoing So It Should Have Nothing To Fear From Any Deposition Testimony.

Defendant's concern about incriminating deposition testimony cannot be squared with Defendant's repeated insistence in its Answer and Affirmative Defenses to the First Amended Complaint ("Answer") that it did absolutely nothing wrong. Defendant denied virtually every substantive allegation. *See, e.g.,* [ECF No. 18] at ¶ 3 (denying that "Labrie embodied the warped culture of sexual misconduct and deviant moral norms at SPS."); ¶ 24 ("The School denies any implication that the School failed to act, or acted belatedly, with respect to SPS student conduct that violated School policies, standards, or the law."); ¶ 25 ("It is denied that the School knowingly permitted the rating or harassment of female students..."); ¶ 30 ("The 'Senior Salute' is not a School-sanctioned or endorsed term or event.");  ¶ 34 ("The School … denies any implication that the School failed to act, or acted belatedly, with respect to SPS student conduct that violated School policies, standards, or the law."); ¶ 36 (denying allegation that SPS was or should have been aware of escalation of Senior Salute tradition by Labrie and the "Slaymakers"); ¶ 45 (denying allegations about Salovaara and Labrie communications about

---

[8] *See Baxter v. Palmigiano,* 425 U.S. 308, 318 (1976) (discussing implications of asserting Fifth Amendment Privilege in civil proceeding).

"Slaypril" and "slaying," answering: "the School states that these were non-public communications that the School was under no obligation to monitor, and about which the School had no knowledge at the time they occurred."); ¶ 65 ("The School denies that it had knowledge or information of any 'instances of aggressive sexual behavior by Labrie' prior to the May 30, 2014 incident between F.P. and Labrie."); ¶ 118 ("The School denies that F.P. was subject to bullying or that the hockey team stood in unison pointing and starting her down."); and ¶ 133 ("[The School]… denies that any divulgence of F.P.'s name or any of the alleged online postings are in any way the result of actions or omissions on the part of the School."); *see also id*. at 61 (Defendant's Fifth Affirmative Defense states that "[t]he injuries and damages claimed by Plaintiffs on behalf of F.P., if any, resulted from an intervening or superseding cause and/or causes, and any act or omission on the part of the School was not the proximate and/or competent producing cause of such alleged injuries and damages.")

If the Answer's repeated denials are true, the potential deponents at issue would, presumably, testify consistently with these denials and without concern about any potentially incriminating statements that could be made under oath. Nor, for that matter, can Defendant's position be squared with its *DiBenedetto* filing saying Owen Labrie is the only culpable party. *See generally* **Exhibit A** attached hereto. If so, these potential deponents should have no hesitation saying so under oath.

### 2. The Law Precludes Defendant's Sweeping Deposition Stay Request.

The U.S. Supreme Court has long recognized that a defendant has no constitutional right to a stay simply because of a parallel criminal proceeding. *United States v. Kordel*, 397 U.S. 1, 11 (1970). Determining whether to grant a stay "bespeaks a reasonable squaring of the interests of the parties, the court, and the public." *Microfinancial, Inc. v. Premier Holidays Int'l, Inc.,* 385

F.3d 72, 78 (1st Cir. 2004). Because Plaintiffs' claims are grounded in New Hampshire law, the Court must balance Plaintiffs' "right to the redress of their actionable injuries" under the New Hampshire Constitution, which requires "that the substantive rights of plaintiffs to maintain actions in tort be accorded solicitous protection." *Gould v. Concord Hospital,* 126 N.H. 405, 409 (1985) (quoting N.H. CONST. pt. I, art. 14). To outweigh the plaintiff's strong interest in advancing her case, a defendant must cross the high threshold of establishing a "clear case of hardship" that justifies the precise relief being requested. *Austin v. Unarco Indus., Inc.,* 705 F.2d 1, 5 (1st Cir.1983); *see also generally* FED. R. CIV. P. 1 (construing Rules so as "to secure the just, speedy, and inexpensive" determination of cases).

Here, Defendant cannot meet this high burden. Its Motion is rooted in precisely the type of "caterwauling about the onus of conducting a civil trial during the pendency of a [criminal investigation]" that the First Circuit found "rings hollow." *Microfinancial, Inc.,* 385 F.3d at 78. Indeed, by responding to Plaintiffs' Interrogatories under oath, Defendant waived its right to invoke the Fifth Amendment protections and, by producing documents over which a privilege might have been asserted, any applicable Fifth Amendment privilege may well have been waived. *United States v. Doe,* 465 U.S. 605, 612 (1984). The First Circuit has rejected attempts to stay cases under similar circumstances because "a stay cannot preserve what a defendant already has surrendered." *Microfinancial, Inc.,* 385 F.3d at 79.

Additionally, the interests of justice do not favor the relief Defendant requests. The Attorney General's investigation only pertains to SPS itself. The Attorney General has not named any <u>individual</u> targets of the investigation and no credible evidence suggests that he will. Further, this case has been pending for nearly 18 months, and not a single person has been deposed. Justice delayed is justice denied. As time continues to pass, memories fade, documents

get lost, and Plaintiffs' ability to substantiate their claims irreversibly diminishes. When weighed against Defendant's transparent interest in minimizing sworn testimony by its current and past agents and employees during the pendency of a criminal investigation, particularly, by its own account, where no criminal conduct occurred, there is simply no contest.

The parties have worked cooperatively through a number of issues and Plaintiffs are willing to continue that cooperation to work through any specific issues the Attorney General's investigation may present. But that cooperation is not so elastic as to permit a stay of depositions of virtually all of Defendant's current and former employees and/or agents. In short, Defendant has not given the Court any cognizable basis to support its request, which should be denied.

## CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully submit this Partial Objection to Defendant's Motion, and Plaintiffs assent to a pretrial conference with the Court to reset the schedule, and allow the parties to proceed with <u>all</u> deposition discovery as soon as possible.

Date: August 17, 2017                                Respectfully submitted,

/s/ Charles G. Douglas, III
Charles G. Douglas, III (NH Bar # 669)
DOUGLAS, LEONARD & GARVEY, P.C.
14 South Street, Suite 5
Concord, NH  03301
603-224-1988 (P)
603-229-1988 (F)
chuck@nhlawoffice.com

Steven J. Kelly (admitted *pro hac vice*)
Steven D. Silverman (admitted *pro hac vice*)
Stephen G. Grygiel (admitted *pro hac vice*)
Edward P. Parent (admitted *pro hac vice*)
Anna S. Kelly (admitted *pro hac vice*)
SILVERMAN THOMPSON SLUTKIN WHITE, LLC
201 N. Charles Street, Suite 2600
Baltimore, MD 21201
410-385-2225 (P)
410-547-2432 (F)
skelly@mdattorney.com
ssilverman@mdattorney.com
sgrygiel@mdattorney.com
nparent@mdattorney.com
akelly@mdattorney.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that, on August 17, 2017, I served the foregoing via the Court's ECF electronic transmission in accordance with the Court's Administrative Procedures for ECF to the registered participants identified on the Notice of Electronic Filing, and paper copies will be sent to those indicated as non-registered participants, if any.

/s/ Charles G. Douglas, III
Charles G. Douglas, III, NH Bar #669