*NO COPY OF THIS TRANSCRIPT MAY BE MADE PRIOR TO JANUARY 2, 2018

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
                                        \*
ALEXANDER and SUSAN PROUT,              \*
as parents, next friends, and          \*
legal guardians of F.P., a             \*
minor,                                 \*
            Plaintiffs,                \*   16-cv-225-PB
                                        \*   September 20, 2017
            v.                         \*   2:03 p.m.
                                        \*
ST. PAUL'S SCHOOL                       \*
            Defendant.                 \*
                                        \*
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*



TRANSCRIPT OF HEARING ON
MOTION TO MODIFY SCHEDULING ORDER
BEFORE THE HONORABLE PAUL J. BARBADORO

Appearances:

For the Plaintiffs:     Stephen G. Grygiel, Esq.
                        Steven J. Kelly, Esq.
                        Silverman, Thompson, Slutkin &
                        White, LLC

                        Charles G. Douglas III, Esq.
                        Douglas, Leonard & Garvey, PC


For the Defendant:      Bruce W. Felmly, Esq.
                        Michael A. Delaney, Esq.
                        Jennifer L. Parent, Esq.
                        McLane Middleton, PA

                        Elyse D. Echtman, Esq.
                        Orrick, Herrington & Sutcliffe, LLP


Court Reporter:         Liza W. Dubois, LCR, CRR
                        Official Court Reporter
                        U.S. District Court
                        55 Pleasant Street
                        Concord, New Hampshire 03301
                        (603) 225-1442

```
 1                     P R O C E E D I N G S
 2              THE CLERK:  Court is in session and has for
 3      consideration a motion hearing in the matter of
 4      Alexander and Susan Prout versus St. Paul's School,
 5      civil number 16-cv-225-PB.
 6              THE COURT:  All right.  I'll hear you on your
 7      motion to modify the scheduling order.
 8              MR. FELMLY:  Good afternoon, may it please the
 9      Court, your Honor.
10              I'm Bruce Felmly, and together with Mike
11      Delaney and Jennifer Parent from McLane Middleton, we
12      represent St. Paul's School in this matter, the
13      defendant.
14              I'd also like to introduce to the Court
15      Attorney Elyse Echtman, who's from the Orrick firm, who
16      was admitted this week pro hac vice and who we have
17      asked that firm to coordinate with us and cocounsel with
18      us in connection with both the civil case we're here on
19      as well as the criminal matters that are pending.
20              This motion was filed in August in order to
21      address, really, two realities that are facing the
22      parties and that affect the schedule.  By the time we
23      filed it, it was clear that the original schedule the
24      parties had set up for discovery and for handling the
25      deadlines on the preparation for trial was not going to
```

1   be realistic.  We had a September date for the

2   plaintiff's disclosure.

3           The parties have engaged in substantial

4   discovery, both at the interrogatory level, initial

5   disclose, and in document discovery, but I'll address

6   some of the problems and issues that went on with that,

7   and it became clear that we were not going to be on a

8   track that would lead us through the fall on the

9   schedule that had been established to a trial in March.

10          The second factor or reality that unexpectedly

11  confronted the defendant is that in July the Attorney

12  General of New Hampshire announced to the school and

13  publicly that there was underway a criminal

14  investigation related to St. Paul's School bearing on

15  several different issues, including exactly the issues

16  that are at the heart of this case, the matter involving

17  Owen Labrie and the senior salute and the issue of

18  whether there was --

19          THE COURT:  Are they -- they're telling you

20  they're investigating the Owen Labrie matter?

21          MR. FELMLY:  Oh, yeah; the senior salute, the

22  events of that.  I don't know that they're going in and

23  saying, we're going to retry the criminal case, but the

24  issue of how it would be that the school would have that

25  circumstance developed, what is the history of the

1    senior salute, what's the level of oversight --

2              THE COURT:  Did you get some kind of formal

3    notice of this investigation?

4              MR. FELMLY:  We did.

5              THE COURT:  Do you have a copy of whatever

6    that notice is?

7              MR. FELMLY:  We do, although I'm not sure that

8    is in a position to be shared, certainly in a public

9    way, and Mr. Delaney, who's focused more on the criminal

10   investigation, but we received --

11             THE COURT:  Has the plaintiff seen it?

12             MR. FELMLY:  They have not seen the

13   materials that are not available publicly, no.  We are

14   constrained --

15             THE COURT:  Well, I'm just trying to figure

16   out -- you're representing to me that the scope of the

17   investigation that the Attorney General has notified you

18   that he is -- who is the Attorney General -- he is

19   conducting is -- encompasses the very acts that are the

20   subject of this litigation; is that --

21             MR. FELMLY:  I'm representing that and I don't

22   think there's any question about that, although it goes

23   broader than that.  It also includes historic issues

24   that were the product of an investigation the school

25   undertook and released information about historic

1    impropriety that involved certain faculty members.

2              There was also some incident --

3              THE COURT:  I'm just a little -- I don't have

4    any reason to dispute your contention.  It just seems a

5    little bit strange to me that the Attorney General

6    through his representative, the County Attorney,

7    presumably investigated the circumstances of this case

8    quite thoroughly before they indicted somebody, went to

9    trial, and obtained convictions against them.

10             So I'm just trying to understand.  Did they

11   explain why they want to reinvestigate this particular

12   case?

13             MR. FELMLY:  Well, not -- there are dialogues

14   and discussions going on in that criminal investigation.

15   I don't know that they gave us their entire strategy,

16   but I think that their position was they were concerned

17   to make sure there were not underlying system problems

18   or issues that go beyond a particular incident or a

19   particular assault that might affect the safety or the

20   welfare -- the way they described it was they were

21   looking at issues in terms of, you know, injuries to

22   children as well as obstruction of justice --

23             THE COURT:  I know very little about anything

24   to do with this case other than what you have told me

25   about through your pleadings and in other statements,

1   but I thought there was some incident this past spring

2   or summer that triggered the investigation and I thought

3   the investigation was primarily focused on that.

4           MR. FELMLY:  No.  But it's part of it.  Let me

5   read to you -- this is --

6           THE COURT:  Am I right in assuming that that

7   at least is ostensibly what triggered this new

8   investigation?

9           MR. FELMLY:  I don't know if that was the

10  straw that, you know, broke the camel's back in terms of

11  it, but I'll tell you what the Department of Justice in

12  their news release on July 13th said, and it encompasses

13  the things I've just mentioned.

14          "The investigation has been initiated as the

15  result of a 2017 report concerning sexual assaults by

16  St. Paul's teachers on their students," which is the

17  historic issue.

18          "Earlier information about student sexual

19  conquest rituals such as the 'senior salute,' a practice

20  which led to the highly publicized arrest, trial, and

21  conviction of a St. Paul's student in 2015; and

22  allegations of a similar ritual reported in June of this

23  year."

24          So that combination of events is what they

25  have told us is the reason why in July they've --

1    they've developed that.  And, as you know, it was

2    publicized, there was an issue in June of certain

3    students using a fast food paper crown and allegedly

4    keeping track, according --

5              THE COURT:  I don't know, frankly.

6              MR. FELMLY:  Okay.  Well I'll tell you that.

7              THE COURT:  I don't know anything about that.

8              MR. FELMLY:  There was an allegation that

9    there was some sort of action by students where they

10   were photographing people with this fast food sort of

11   Burger King crown and names of people that supposedly

12   people had dated or hooked up with or something was on

13   there.  And that became a matter of school disciplinary

14   action and concern and it obviously is a matter of

15   concern to the Attorney General's Office.

16             So that is part of the mix, but the point I

17   was making to you is that a critical part of the mix is

18   the exact circumstance and issues that is involved in

19   this case and I don't think they can be, you know,

20   more clear about that; that the Owen Labrie alleged

21   assault --

22             THE COURT:  So the Attorney General

23   potentially may indict additional people for the events

24   that led to the indictment of Mr. Labrie.

25             MR. FELMLY:  That would be --

```
 1              THE COURT:  That's what you're telling me.
 2              MR. FELMLY:  I'm telling you they have said
 3    this will go where it goes and that -- it's a criminal
 4    investigation, so that potential, of course, exists.
 5              THE COURT:  Okay.
 6              MR. FELMLY:  And so --
 7              THE COURT:  But my experience with the
 8    Attorney General's Office is that it doesn't just
 9    conduct random investigations -- criminal
10    investigations.  That's why it seems unusual to me.  I'm
11    trying to understand what is going on here.
12              It's basically a historic look at everything
13    that St. Paul's has done in this area that might result
14    in criminal charges being brought against anyone for
15    anything from today going back to when the statute of
16    limitations would have run.
17              MR. FELMLY:  Well, I think they've indicated
18    that they're looking at a period that goes back to 2011
19    in particular, but the issue of the report that was
20    published by the school that identified some historic
21    incidents involving faculty members goes back.
22              So we don't know, really, what the outside
23    limit of it is.  I can tell you they have made a
24    document request which is extremely broad and extremely
25    persuasive and detailed.  We have document IT experts
```

1    working on that.  It will dwarf, in all likelihood, the
2    extensive ESI and documentation going on here.  The
3    interviews of various parties have not occurred, but
4    there clearly is a group of officials and administrators
5    and faculties that are involved with the school, either
6    now or formerly, that in all probability are going to be
7    interviewed in part of that investigation and it will
8    clearly overlap with exactly the circumstances that the
9    plaintiffs have alleged their breach of duty regarding
10   the Prout plaintiff.
11            THE COURT:  I have not received any -- any
12   requests from the Attorney General's Office that I stay
13   this case pending its investigation.  Have they
14   indicated to you that that -- they want a stay of
15   what's occurring in this case?
16            MR. FELMLY:  You know, Mr. Delaney had those
17   discussions and -- Mike, I don't know if I -- it's best
18   for us to have you state that so that I don't over -- I
19   don't think they've asked us to request a stay, but I
20   believe they've spoken to that issue.
21            MR. DELANEY:  Good afternoon, your Honor,
22   Michael Delaney.  Let me begin by acknowledging the
23   point you made.
24            I do think this is unique and certainly to the
25   extent that your observation is that it would be unique

1    for the Attorney General's Office to commence an

2    investigation broadly looking at that.  I think --

3              THE COURT:  Yeah, I -- I apologize for my

4    ignorance about this, but I frankly -- I make an effort

5    kind of to be uninformed about these matters.

6              MR. DELANEY:  Understood.

7              THE COURT:  I don't -- I don't do it the way

8    if I was a juror or something, but I really don't want

9    to get involved in reading about it and engaging with it

10   because I'd rather have you be the sources of

11   information for me about the case.

12             MR. DELANEY:  Yeah.

13             THE COURT:  And I don't mean to imply any

14   criticism.  I'm simply -- ordinarily you would think,

15   okay, I thought there was this incident in May and I

16   thought that the investigation was about this incident

17   in May and that they might need to look back

18   historically to other matters while investigating that,

19   but your colleague has suggested to me that, no, it's,

20   indeed, a much broader, far-ranging criminal

21   investigation that encompasses all of these events, not

22   just to the extent they may inform an investigation of

23   current possible criminal conduct, but because they may

24   want to be bringing charges about past conduct,

25   including conduct associated with the Labrie case.

1     And that's -- that was new to me, so I -- it

2   may well have already been clear in what's in the media,

3   but I frankly don't think it's a good idea for me to be

4   trying to track down whatever's happening in the media

5   about a case like this.  I find I do better if I just

6   focus on what the parties give me.

7     MR. DELANEY:  So let me do my best to just

8   give you the status of what I can advise you --

9     THE COURT:  Okay.

10     MR. DELANEY:  -- with regarding the criminal

11   investigation.

12     And if I might add one prefatory comment, I

13   do have more information about the status of that

14   investigation than most of the other parties to this

15   case.  And your Honor is well aware that when a criminal

16   inquiry is commenced, there are circumstances in which

17   somebody that is involved in that inquiry may not be at

18   liberty to speak publicly about exactly what's going on.

19   But let me first address the charges that you asked

20   about and then the scope of the investigation.

21     Relative to the charges, the Attorney

22   General's office identified two charges publicly in the

23   press release which in and of itself was a bit unique

24   announcing the investigation and then they added a third

25   charge, which was a catchall.  And the charges that they

1    identified were endangering the welfare of children and

2    obstruction of government administration.  And the

3    catchall was essentially any other charges that the

4    investigation might bring forward that would be

5    appropriate to be considered.

6              So those are the charges that they are

7    evaluating in connection with the commencement of a

8    parallel criminal investigation.

9              Relative to the scope, they have identified

10   three areas of inquiry in connection with those charges.

11   Two of them fall under the umbrella of the senior

12   salute.  And this is in the press release that Attorney

13   Felmly just identified.  One is they have identified the

14   senior salute in the context of the Labrie criminal

15   trial in the public press release.

16             So we have reason to believe, based on the

17   press release standing alone, that the scope of the

18   review of the senior salute encompasses the criminal

19   trial which obviously forms a basis of the current

20   allegations by the plaintiffs.

21             THE COURT:  And does the document request

22   you've received seek documents that pertain to the

23   Labrie matter?

24             MR. DELANEY:  I'm struggling with how much

25   information I can share with the Court in that regard.

1   Let me -- let me try to answer your question as follows:

2           I can tell you that the scope of the materials

3   that are under review in connection with the criminal

4   case is not any different than this case relative to the

5   senior salute and we've identified a time period at

6   least for initial purposes back to 2001 -- '11.  Excuse

7   me.

8           So we have requests broadly targeted to areas

9   of inquiry that the Attorney General is looking at that

10  goes all the way back to 2011.

11          THE COURT:  But do they -- and I want to be

12  clear.  I'm not asking to disclose anything that you

13  feel that there's some --

14          MR. DELANEY:  Understood.

15          THE COURT:  -- privilege or other reason not

16  to disclose.  I will say, though, it's not apparent to

17  me what the privilege is.  You don't have a privilege

18  relationship with the Attorney General's Office.  If

19  they send you a document request, I don't see why you

20  couldn't tell me whether the scope of it encompasses the

21  Labrie matter or not, but --

22          MR. DELANEY:  Your Honor, my concern is

23  confidential proceedings that I would have obligations

24  at law not to comment on publicly.

25          THE COURT:  You mean grand jury proceedings?

1            All right.  So this isn't a document request;

2   this is a grand jury subpoena you're talking -- I --

3   see, I -- when you use euphemisms, I can't --

4            MR. DELANEY:  Yes.

5            THE COURT:  -- really know what you're talking

6   about.

7            MR. DELANEY:  Yes, your Honor.  We're dealing

8   with grand jury proceedings.

9            THE COURT:  So you're concerned there may be

10  some state obligation -- state law obligation on your

11  part not to disclose the context of a grand jury

12  subpoena.

13           I don't know that to be true.  There are

14  clearly obligations of confidentiality that the Attorney

15  General's Office has with respect to grand jury matters,

16  but I'm not aware that the recipient of a grand jury

17  subpoena under state law is barred from discussing it

18  with a judge in a pending civil case.

19           You think there's some statutory bar on that?

20           MR. DELANEY:  And to assist your Honor with

21  the information that you need, I would offer that the

22  scope of the information at issue in connection with

23  pending subpoenas overlaps substantially with the

24  discovery material that would have a bearing on the

25  civil case.  It goes back to 2011 and it would address

1   the issues at issue in this case.

2           THE COURT:  I'm trying to proceed cautiously

3   here, given your evident caution in how you're

4   addressing me about this matter, but from my

5   perspective, you both need to understand my view.

6           I have worked as a practitioner in matters of

7   very high public attention in which there are pending

8   criminal and congressional investigations.  I was deputy

9   chief counsel of the Iran-Contra committee.  We had a

10  pending independent counsel investigation of the same

11  people that we were investigating for Congress.

12          As a judge, I've presided over very complex

13  litigation involving parallel criminal and civil

14  investigations.  There was a case involving the TYCO

15  Corporation and a defendant named Dennis Kozlowski you

16  may have heard of.  In that case, there were a

17  pending -- pending criminal investigation and criminal

18  charges involving one of the principals in the civil

19  litigation I had, Dennis Kozlowski.

20          In that case I declined to stay the litigation

21  simply because of the pendency of the case and my basic

22  view, frankly, is that blanket stays are not ordinarily

23  necessary to satisfy the needs that you have.  Rather,

24  the way to address it is to deal with it in a

25  cooperative way with plaintiffs' counsel and with the

1    government to recognize that there may be additional

2    burdens that are imposed on someone that is the subject

3    of parallel pending criminal and civil investigations;

4    to recognize that people may have Fifth Amendment

5    privileges that they may assert in one context or

6    another; to recognize that there are additional

7    discovery burdens that are imposed while there are these

8    pending investigations that may require some cooperation

9    and some tailoring of deadlines, but that a blanket stay

10   is not ordinarily warranted and an investigation like

11   this can go on for many years.

12           And so absent some -- and I would say in the

13   Kozlowski case, I received a request from the district

14   attorney that I stay the litigation.  And even though

15   the district attorney requested I stay the litigation, I

16   refused to do so.

17           So that's why I'm asking these questions.

18           MR. DELANEY:  Yes.

19           THE COURT:  I want to understand as best I can

20   what exactly your problem is to determine whether I

21   should deviate from my ordinary practice, which would be

22   not to grant a stay, but instead to find out from you

23   what specifically we can do by way of agreement --

24           MR. DELANEY:  Agreed.

25           THE COURT:  -- to get -- keep this case

1    moving.

2              MR. DELANEY:  And so we agree with you, your

3    Honor, and we have not submitted a pleading in this case

4    that is requesting a blanket stay in connection with the

5    discovery.  I think a fair reading of the pleadings of

6    both sides that have been submitted for your Honor's

7    consideration is that we come to you with a general

8    agreement that the parties recognize that there need to

9    be some scheduling modifications in this case based on

10   particular developments in the case itself and from the

11   school's perspective in part based on the commencement

12   of the parallel proceedings.

13             THE COURT:  And you're saying that's all you

14   want and these unreasonable plaintiffs won't meet you

15   halfway.

16             MR. DELANEY:  So what we're looking to do is

17   essentially structure the scheduling going forward that

18   does not stay the civil discovery by any means, but

19   simply structures the order of depositions from this

20   point forward which takes into consideration just the

21   reality that we've had a unique development, that that

22   is going to impact the school and administrators --

23             THE COURT:  But just to -- but you've tried to

24   talk this out with -- you know that if you both came

25   forward and said, we'd like to do the following things

1    to modify the schedule, the chances are probably 99.9

2    percent that I would simply agree.  And that you haven't

3    done that suggests to me that there's some disagreement

4    that you have not yet been able to resolve --

5              MR. DELANEY:  The --

6              THE COURT:  -- about how quickly or slowly

7    discovery will proceed in the case.

8              MR. DELANEY:  And I think the core of the

9    disagreement, your Honor, would be our request to

10   structure the deposition schedule going forward so that

11   some of the core trustees, core administrators, core

12   faculty, current and former, that we anticipate will be

13   the focus of potential inquiries from the Attorney

14   General relative to its investigation; not in any way to

15   halt those depositions, but just in recognition of where

16   we're at in the developments.  Structure the discovery

17   going forward so that we begin with the depositions that

18   both sides are asking for or want and simply reschedule

19   some of the depositions that were scheduled this summer

20   for some of the core administrators --

21             THE COURT:  I -- I guess I'm confused and

22   maybe what I'll do is let Mr. Felmly finish anything he

23   wanted to say, but I want to turn to the plaintiffs and

24   say, what do you understand they're asking you for that

25   you're not willing to give them and why aren't you

1    willing to give them what they're asking for because,

2    again, this seems to me something reasonable people

3    should be working out without the intervention of the

4    judge.  It's got a problem, I'd like to move this three

5    weeks, I'd like to make sure this person doesn't have to

6    be testifying in two places at once, this person may

7    have a Fifth Amendment issue we need to work -- let's

8    postpone that person's issue to the end.

9            These are things that -- I mean, I'm sure you

10   all as lawyers have had these kinds of experiences and I

11   think you should be able to work them out.

12           Say whatever else you want to say, Mr. Felmly,

13   and then I'll hear from plaintiffs because I'm going to

14   be trying to focus now in on specifically what's the

15   problem here; why aren't you willing to agree to some

16   reasonable extensions of some of these deadlines as long

17   as we keep the case basically on track.

18           I mean, I frankly am a little disappointed we

19   haven't gotten much further in the case than we have by

20   now and I'm -- I would like to see things accelerated

21   rather than slow it down, but it may be necessary to

22   slow down some of the depositions, for example, and I --

23   I'm willing to hear you on that, but my first instinct

24   is why haven't you agreed on these things.

25           MR. FELMLY:  Well, we've had a number of

1   meet-and-confers on this issue and we're here because we

2   haven't completely agreed.  But let me just tell you

3   three or four things that go to the heart of what our

4   request is.

5          First, we're not here, as Mike said -- we're

6   not here asking for a complete stay.  There are probably

7   six to eight witnesses that are in the administration,

8   faculty, related to the school which will be the people

9   most involved in preparing to deal with the

10  investigation of the Attorney General's Office.  And as

11  to that group of people, which the plaintiffs want to be

12  their early witnesses, we are saying we should get other

13  discovery done, let this situation begin to sort itself

14  out, revisit it with the Court.

15         We suggested that we do a tremendous amount of

16  discovery this fall.  There are probably in excess --

17         THE COURT:  Are you asking for any delays in

18  anything other than deposition discovery?

19         MR. FELMLY:  No.

20         THE COURT:  Okay.

21         MR. FELMLY:  No.  We -- but let me --

22         THE COURT:  All of the document discovery and

23  interrogatories can proceed as scheduled; we don't need

24  to change any deadlines --

25         MR. FELMLY:  Don't need to change it.  And

1    just so you know, so that we're not here suggesting that

2    somehow the school is dragging its feet on that, we --

3    we received last week the plaintiffs' ESI information

4    after a series of rolling indications that it would be

5    coming along this summer.  And we are now in -- the

6    recipient of, you know, thousands of pages of material;

7    we've got teams of people going through that.  We

8    delivered our ESI information primarily on July 7th and

9    have supplemented it.

10            We have indicated that there are approximately

11   20 deponents.  Many of them are students, people that

12   were involved in the incident, members of the Prout

13   family.  None of those witnesses have any particular

14   difficulty or pose any particular conflict or challenge

15   with the criminal investigation.

16            Many of these students are in universities,

17   having graduated, across the country.  They will

18   probably have their own counsel.  We will -- if we

19   wanted to depose 20 or 25 of these people in the fall of

20   19 -- of 2017, we have got our hands full in terms of

21   doing it.  To review these documents, do those

22   depositions, we are completely favorable and have

23   suggested to the plaintiffs we can do that.

24            And there are a number of other people.  There

25   are some -- there are some school employees that are

1    not, we think, you know, in the same situation where

2    they would be diverted from their efforts in cooperating

3    with the AG's investigation.  So we're not dragging our

4    feet.

5              We first sent out subpoenas for a member of

6    the Prout family initially in November as a draft

7    subpoena for Lucy Prout, the sister.  We went through

8    the entire spring seeking with the counsel that the

9    family hired for her to get her deposed.  The plaintiffs

10   say in their papers, not one deposition has been taken.

11   And the reason for it is Lucy was sent to Europe for

12   several months.  We were just about to get Lucy's

13   deposition done, she's a key witness, she was involved

14   with her sister in connection with the Labrie matter,

15   and then the criminal investigation come in.

16             We could tee up Lucy Prout's deposition, you

17   know --

18             THE COURT:  Well, both sides should be able to

19   take the depositions of people they want, not just you

20   taking their --

21             MR. FELMLY:  No, no, I --

22             THE COURT:  -- people's depositions.

23             MR. FELMLY:  -- understand that, and that's

24   what I'm saying; there are witnesses they can take

25   that --

1          THE COURT:  All right.  So then let's try to

2     get -- you want to get specific before I talk to the

3     plaintiff?  I'll give you that chance.

4          MR. FELMLY:  No.  The only thing --

5          THE COURT:  Specifically whose deposition are

6     you looking to put off and how long are you looking to

7     put it off for?

8          MR. FELMLY:  Yeah.  I think that what -- well,

9     here's what we suggest.  Let's do the witnesses that

10    don't pose this problem and then report back to the

11    Court, say, in two months, in early December, and say,

12    where do we stand on the criminal investigation; how

13    does it bear on the officials, the six or eight people

14    that are involved; and how much further delay, if any,

15    is needed on them.

16          There will be no loss in efficiency or

17    progress --

18          THE COURT:  But who are we proposing to put

19    off that they want?

20          MR. FELMLY:  There are -- there are -- I can

21    give you the names.  If you need them in open court, I

22    can do that.  They have -- they've asked for the rector;

23    they've asked for some former trustees; they've asked

24    for the dean of students; they've asked for the vice

25    rector for residential life.  These are all people that

1   would be involved in the day-to-day operations --

2           THE COURT:  They also sound like people who

3   it's entirely rational to believe would be deposed at

4   the end of the process rather than the beginning.

5           MR. FELMLY:  It would -- that -- that would be

6   their call.  They were seeking to do it at the front end

7   and I don't believe there would be any prejudice doing

8   it at the back end.  I mean, I've got the listing on two

9   pages here of name by name by name of people we could

10  produce.

11          But there are also employees of the school

12  that we believe we could produce.  The person that's the

13  head of the security department --

14          THE COURT:  You mean you have names of lots of

15  people that they told you they want to depose that

16  you're willing to produce.

17          MR. FELMLY:  A number of them.  But as I'm --

18  I'm not mincing words.  There are that group that we

19  think should be at the back end of this discovery.

20          We're not going to have that process done for

21  a March trial.  We're not -- the school has no interest

22  in delaying this just for delay's sake.  It is a

23  question of how to integrate it and combine it with the

24  efforts with the --

25          THE COURT:  I --

1          MR. FELMLY:  -- criminal investigation.

2          THE COURT:  I need to deal with some

3   specificity here.  What I -- to the extent that I've

4   been able to get it from you, what I understand you to

5   say is we've got a lot of depositions of people we want

6   to take and we'd like to move ahead and take those.

7          They have a lot of depositions that they want

8   to take.  Many of the people they want to depose we

9   think can be deposed right away.  And all we're asking

10  you, Judge, is let's focus on the people that can be

11  easily deposed on either side that do not raise these

12  concerns that we have because of the parallel criminal

13  investigation and let's wait on those a little bit and

14  see what happens with this criminal investigation.

15         At some point you're going to get to a point

16  where a year goes by and the criminal investigation is

17  still pending and I'm going to say to you, I don't care,

18  they need to be deposed because I'm not going to wait

19  until an open-ended criminal investigation has ended to

20  resolve my case.

21         MR. FELMLY:  I understand.

22         THE COURT:  But I'm initially -- my initial

23  reaction is if there are people that they can and

24  logically should depose as preliminary matters, let's

25  focus on those first and then let's come back in 90 days

1    and see where you are.  Maybe we can -- have to schedule

2    those other ones up and maybe we can continue them for

3    another 90 days.  I'm not going to let the case go for

4    three years with people undeposed and because there's

5    still a pending criminal investigation, we can't

6    complete the case.  That's not going to happen.

7            But some modest extensions while crucial parts

8    of the case are addressed, I don't see why we couldn't

9    do something --

10            MR. FELMLY:  That is exactly what we're asking

11   for.  We --

12            THE COURT:  Okay.  I just find your request so

13   indefinitely stated that I have trouble managing --

14            MR. FELMLY:  I apologize.

15            THE COURT:  -- it.

16            MR. FELMLY:  I apologize.

17            But I -- I'm trying to make it clear.  I think

18   there are 20 some-odd depositions that the parties can

19   jointly get done, you know, in the next several months.

20   We can report back, we will then know more and whether

21   we'll need another 90 days, but I'm not contemplating to

22   stand in front of you and say, "How's never; is never

23   good for you, your Honor?"

24            That's not what we're looking for.

25            The school wants this case resolved.  We've

1  worked hard to try to resolve it.  But I think a staged

2  approach and a second look in 90 days or so makes good

3  sense.

4          And we understand, you know, where you're

5  coming from on that and haven't asked for anything in

6  terms of a stay.

7          THE COURT:  Okay.  Let me hear from the

8  plaintiffs on this.

9          So you understand my general view.  My

10  general view is the pendency of the parallel criminal

11  investigation is not by itself a sufficient basis for a

12  blanket stay, but it may require some cooperation with

13  regard to the scheduling of a certain small number of

14  sensitive depositions.

15          It shouldn't ordinarily delay document

16  discovery.  Apparently the plaintiffs are

17  not -- excuse me -- the defendant is not arguing that it

18  should delay document discovery.  The defendant is not

19  arguing that it should delay most of the depositions

20  that the parties want to take.  The defendant is merely

21  asking that we put off till further on in the process

22  the taking of certain core number of depositions.

23          That doesn't strike me as an egregiously

24  unreasonable request.  Why aren't you prepared to agree

25  to something like that?

1          MR. GRYGIEL:  The answer, your Honor, is

2    simple and I'm glad you asked the question.

3          Because while they are prepared and we

4    acknowledge to go forward with some discovery, the paper

5    discovery is largely done.  We have exchanged

6    interrogatories.  We've exchanged document requests.

7    Our document production -- production as of last evening

8    is 90 percent done.  They already have our expert

9    witness materials on damages.  We received I think

10   13,000 pages, which Mr. Felmly called the supplement,

11   last night to their original production of about 2,000

12   pages.  That's all really done.

13         So when you step back and look at the

14   operative reality here, what we are looking at is the

15   functional equivalent of a stay whereby the defendants

16   depose all of the key witnesses on our side of the case

17   at their discretion over a period of the next couple of

18   months while some of the key witnesses --

19         THE COURT:  All right.  Let me interrupt you.

20   This is where I'm having trouble.  Okay?

21         So, granted, I haven't been -- I've been out

22   of your business for a long time.  I've been on the

23   bench 25 years now so my -- my knowledge and background

24   is dated, I will confess.

25         But it is a standard way to operate a case

1    like this to proceed inward and move outward, to proceed

2    at the bottom and move up.  And it would seem to me that

3    there would be a number of people whose depositions you

4    would need to take who would be more intimately involved

5    with the particular incidents that gave rise to your

6    client's claim for liability and ordinarily would not

7    want to be deposing trustees and people like that until

8    you have already done that groundwork.

9            I think they're suggesting let's do that

10   groundwork because those people are not problems for us

11   and let's get that out of the way and then let's come

12   back in 90 days and see where we are.

13           MR. GRYGIEL:  Your Honor made the point of

14   inspecificity.  That's a point I share.  For example,

15   two of those core witnesses who are directly involved at

16   the issues -- in the liability issues central to this

17   case are Jada Hebra and Chad Green and Bob Rettew, a

18   former employee now in Pittsburgh.  They say they're off

19   limits.

20           We said, well, we'd like to also depose some

21   of these other witnesses who are no longer at the

22   school:  Andrew Thompson, a former student; two other

23   students whose names have been used in initials for

24   purposes of confidentiality, HH, former student, GH,

25   former student; and potentially the Concord Police

1    Department.  The defendants say, no, you shouldn't get

2    to depose those people either.

3            Then there are current employees, some of

4    whom, for example, the security director, was on their

5    list of people we could not depose, Mr. Pangakis; they

6    said, no, you can't depose him.

7            And not just, your Honor, a question of

8    structuring the timing of the depositions; it's -- their

9    stay is indefinite.  What they basically do is come in

10   with zero specificity, which is required to get what is,

11   in effect, a stay, a heavy burden, a clear case of

12   hardship, according to the case law.  Heck, President

13   Clinton was a sitting president and he got deposed.

14           What they come in and say to the Court is

15   probably, maybe, likely these people will be centrally

16   involved.  It's abundantly clear from all the cases

17   cited in the briefing you've got to come in with a

18   specific showing that this person can't be deposed

19   because he has these administrative burdens.

20           THE COURT:  Are you -- again, this is --

21   I've -- this strikes me as a case of people that are not

22   willing to listen to each other and be reasonable.

23           Are you willing to start focusing your

24   depositions on some of the people who are most

25   specifically involved at this -- with this series of

1   events at the lower levels and postpone your depositions

2   of some of the leading current administrators and

3   trustees that are involved in the ongoing investigation.

4          MR. GRYGIEL:  There's a little bit of a

5   disconnect here, your Honor, and I'd like to say first

6   this isn't a case, I think, where we can't talk to each

7   other.  Mr. Felmly and I, for example, I think get along

8   quite well.  We have a lot of friends in common and

9   generally we have very cordial, working-together

10   relationships.

11          The problem is the investigation of the

12   incident at issue.  Frankly, the criminal trial has

13   elucidated the vast majority of the operative facts

14   there.  We've all heard what that's about.

15          A great deal of our case, as one looks at the

16   five counts we've pled, deals with what was going on at

17   the school.  And that means getting a picture, getting

18   firsthand testimony, from people who set policy, people

19   who were involved in implementing that policy, and some

20   of those are higher-up people.  It's not the usual kind

21   of tort case where you do exactly as your Honor

22   suggested, start small and build up.  It's a little bit

23   different than that.

24          Another reason that I think we're here today

25   is because when I got the defendant's papers -- and I've

1    read them now three times over.  I can't understand

2    where they have begun to address, let alone satisfy the

3    burden -- and it's a heavy burden -- that they have to

4    say an indefinite stay is warranted.  Supreme Court said

5    in Landis that doesn't work.

6              THE COURT:  Let's be -- so let's rule certain

7    things out.  There won't be an indefinite stay.  Not

8    going to happen, not under consideration, they say

9    they're not proposing it.  I agree with you that

10   sometimes things that are not styled a stay can be the

11   functional equivalent of a stay.

12             MR. GRYGIEL:  Right.

13             THE COURT:  So you can't -- we can't complete

14   the case for an indefinite period of time is effectively

15   a stay, but that's not going to happen.

16             What is going to happen is an incremental,

17   continuous discovery process that might have

18   requirements for some delay of a few weeks or maybe a

19   couple of months during key parts of certain people's

20   involvement with the ongoing criminal investigation.

21             So what I'm telling you both, I hope you can

22   hear me, if you force me to do it, I will work with you

23   on individual by individual and I will set your

24   discovery schedule and I can say, take him next, take

25   him, put that person off for another 30 days and I'll

1    talk to you about it later.

2            If you force me to do that, I'll do that, but

3    I don't want to do that and I don't think you want me to

4    do that.  What would be much better is if you would

5    listen to me when I provide you with general guidance

6    and understand that if you force me to make a decision,

7    I will act consistent with that general guidance.

8            And the general guidance I am giving you is

9    depositions should continue.  They should continue not

10   just of people that the defendant wants to depose, but

11   people that the plaintiff wants to depose.  They should

12   continue at an ordinary and reasonable and with

13   deliberate speed and there may be a need to defer a few

14   depositions, not broadly speaking all of the people you

15   want, but perhaps several of the key people for a few

16   months till we see what happens.

17           If in December there's been silence from the

18   Attorney General's Office and nothing has happened and

19   we have no indication as to when this is ever going to

20   end and you've now deposed all the people that you can

21   -- we can agree on could be done in a preliminary way,

22   then you can take those people.

23           Now, you -- you can talk about case law all

24   you want, but I have vast discretion to control the

25   processing of a case in front of me.  And I hope you

1   understand that.  And I certainly have the power, if I

2   determine it makes for sense to do it that way, to say

3   that is how we're going to proceed.

4           So that is my general guidance to you.  With

5   that general guidance, can we identify some people that

6   you want to depose right away that you don't think

7   have -- and you've identified certain people that I'm

8   going to ask Mr. Felmly about.

9           I don't understand why you can't depose a

10  former student right away if you want to depose a former

11  student.  I can't understand why you wouldn't want to --

12  you couldn't depose a former employee to the extent you

13  want to depose a former employee.  I can understand why

14  the rector might not be the person that ought to be

15  deposed first while this thing is going on.  I -- I can

16  understand that.  So that's some very general guidance.

17          Now, with that, can you identify a plan that

18  you would propose that I can get Mr. Felmly's reaction

19  to and then if we can -- if we can't agree, I'll just

20  say, do this, do this, don't do that, and come back and

21  see me in 90 days.

22          If that's the position you want to put me in,

23  I'll do it, but I don't normally like to control the way

24  lawyers behave with that degree of precision.  I usually

25  trust lawyers to behave professionally and I try to stay

1   out of their way because I don't find most lawyers like

2   judges involving themselves in the details of their

3   case.  But if you require me to become involved, I

4   guarantee you, I will.  So --

5              MR. GRYGIEL:  I came prepared, your Honor, to

6   answer that question.

7              THE COURT:  Okay.

8              MR. GRYGIEL:  Yes, we would like to start with

9   former employees, people who wouldn't be burdened by the

10  only argument they made in their papers that we have to

11  do all this work for the Attorney General's

12  investigation.

13             That's Jada Hebra, Bob Rettew, James

14  Waterbury, a former trustee, and Chad Green.  They're

15  all former employees.

16             THE COURT:  Let's start with those.

17             Mr. Felmly, your reaction?

18             MR. FELMLY:  Well, as to Rettew, I don't think

19  there's a problem.  I think we can proceed with him as

20  an employee.  The others are either at the vice rector

21  or dean level, right in the center of this matter.

22             THE COURT:  But they're no longer employed.

23  These are former employees.

24             MR. FELMLY:  No, but they were -- you know,

25  they left -- Jada Hebra left within approximately a year

1   and was involved during the exact pendency.  These are

2   not people that are remote from these circumstances

3   and --

4           THE COURT:  I don't understand why you're

5   concerned.  They're not your employees.  They're not

6   working with you on the -- building your response to the

7   criminal investigation.  I can understand why you

8   wouldn't want people to know what they have to say, but

9   that isn't a legitimate ground to deny their deposition.

10          Help me, as to these people who are no longer

11  employed by you, why -- why should we defer their

12  depositions?

13          MR. FELMLY:  Because they are people that are

14  involved in the scope of the investigation right in the

15  time frame that's critical to it.  They were the

16  officials involved.  It is not fair to say that they're

17  not cooperating or in communication with the school in

18  terms of that process.  In some cases, they have their

19  own counsel, which will be complicating --

20          THE COURT:  Believe me, if somebody asserts a

21  Fifth Amendment privilege or their attorney presents

22  some reason particular to them why they need some

23  additional time, I think -- I would view that as an

24  entirely distinct matter that I would be inclined to

25  grant some deference to.

1        So I understand that.  If they have their own

2   counsel and their own counsel has concerns and they need

3   to get the Court involved in evaluating those concerns,

4   I --

5        MR. FELMLY:  So Chad Green has his own

6   counsel.  Jada Hebra was, you know, the vice rector for

7   student life during the period of time of the senior

8   salute, right in the center of that matter.  Green was

9   the head of students.  Waterbury was key on the board of

10  trustees at that time.  I agree Rettew isn't there.

11  And, frankly, these are the people that are exactly the

12  type of individuals that would be in our group.

13       I mean, I think we're really talking about --

14  and it may be -- Waterbury was new to me.  I don't

15  remember them even hearing indicate they wanted him.

16  But we're talking about six people.  I mean, we're

17  essentially saying -- when you say be specific, you

18  know, there are six individuals we believe -- Waterbury

19  was new to us this afternoon -- that are in this group.

20       By contrast, the plaintiffs have indicated

21  that there are probably 10 or 15 students they're

22  interested in, so they have a joint interest.  And the

23  plan that you enunciated, which was that we're going to

24  take a very small group of people that are going to be

25  in the core of it, multiple of those people have their

1    own counsel, and I don't control that.  And we're going

2    to go charging off and having depositions of them with

3    their own counsel getting involved.

4            I mean, the idea of having us come back in

5    December --

6            THE COURT:  Help me understand what the fact

7    that there is a pending criminal investigation does to

8    the analysis of this particular issue with respect to

9    former employees.  I -- I understand, at least have some

10   understanding and sympathy to the argument that we're

11   trying to run an organization here and we're trying to

12   run an organization that is requiring -- we're required

13   to do many things at once.  And I don't want my

14   principal managers distracted unnecessarily until later

15   in the process.  I got that.  That one registered with

16   me.

17           But that you have a former vice rector who is

18   very knowledgeable about these incidents, just because

19   she's very knowledgeable about these incidents isn't a

20   basis not to take her deposition.  I think there are

21   good tactical reasons why the plaintiffs' lawyer might

22   want to proceed in a different order from what they want

23   to do, but that's their choice.

24           I'm just asking you.  That she may have to

25   give testimony to a grand jury at some point, that she

1    may have to sit down and be interviewed by police

2    officers, I'm not sure why that should require any kind

3    of indefinite stay of her deposition.

4                MR. FELMLY:  Well, I'm not asking for an

5    indefinite stay.  I mean, I --

6                THE COURT:  How long do you want to stay it

7    for?

8                MR. FELMLY:  Well, as I said to you, I think

9    we should stay it just as you articulated it, for the 90

10   days or so until we get and make progress -- we've got

11   more than enough to do.  There's going to be --

12               THE COURT:  Okay.

13               MR. FELMLY:  -- no harm and no foul.

14               THE COURT:  So your request is evolving or I'm

15   understanding differently.

16               So now what you're saying is you only want to

17   put them off for 90 days --

18               MR. FELMLY:  And then revisit --

19               THE COURT:  -- revisit --

20               MR. FELMLY:  -- with you and decide whether or

21   not it's now time to deal with it and whether I can make

22   the case and make that burden or whether we say, look,

23   there's a key point coming up.

24               I don't know what's going to be coming along.

25   I will not be representing some of those people

1    individually.  I don't know what position they'll take

2    when they're noticed for their deposition and a subpoena

3    is issued.  I don't want to get into collateral

4    proceedings over motions to limit, quash, postpone,

5    whatever.  It's unnecessary, because there's more than

6    enough work.

7            They just got us our documents, you know, last

8    week and we've given --

9            THE COURT:  You apparently just got them their

10   documents last week.

11           MR. FELMLY:  Well, no, in fairness, your

12   Honor --

13           THE COURT:  This sort of "he's worse than me,

14   Judge," I'm really not interested.  I --

15           MR. FELMLY:  Well --

16           THE COURT:  -- could care less, frankly.

17           MR. FELMLY:  All right.

18           THE COURT:  So let's focus on the problem at

19   hand.  All right?

20           The problem at hand is we've got to get this

21   case moving.  Okay?  So I've asked -- I am somewhat

22   sympathetic to your point that as to a former employee,

23   merely because they are knowledgeable shouldn't be a

24   basis to prevent their deposition.

25           I'm also sympathetic to his point.  There are

1    a number of witnesses who nobody is going to really

2    object to.  They've got to be deposed.  You want to

3    depose them.  Let's start with the ones that there isn't

4    an objection to and just move -- move ahead.  What is

5    the big problem for you in going that way?

6           MR. GRYGIEL:  The problem with that, your

7    Honor, for me is threefold, if I may be blunt.

8           THE COURT:  Okay.

9           MR. GRYGIEL:  And first is they have to make

10    out a case for this other than I don't want to do it and

11    they haven't done it under the law.  I understand your

12    Honor has vast discretion here, but leaving that aside

13    --

14           THE COURT:  I pretty much do -- can do what I

15    think is in the best interest of trying to manage the

16    case.

17           MR. GRYGIEL:  I understand that, your Honor,

18    and I completely, of course, welcome that.  The second

19    point -- the second point --

20           THE COURT:  And I don't mean that I'm going

21    to be arbitrary about it, but I don't believe that

22    there's some kind of good cause shown standard or some

23    kind of -- that -- where I have to defer to your

24    judgment as to how to proceed.

25           I -- I have to decide how to manage the case.

1    Normally I defer to the -- your joint efforts to manage

2    the case, but if you're not able to work together, I'll

3    manage it for you.  Okay?  So -- and I'm going to do

4    what I think is best for managing it for me.

5              So I get your point.  I put the question to

6    him.  I admit I didn't get a very satisfactory answer as

7    to a former employee.  So I understand that.  But I'm

8    asking you a different question.  Why can't we proceed

9    with those other -- with those other people, not just

10   because I get to do what I want, you can't make me do it

11   differently.  I don't want to hear that approach from

12   you.  I want to hear why can't you do what I'm

13   suggesting, which is depose some of these people for

14   whom there's no objection.

15             MR. GRYGIEL:  And the second answer, your

16   Honor -- I hope it's a better one -- is that some of

17   these depositions that we want to take earlier that

18   might in another case be taken later will moot, we

19   think, some of these less important depositions, for

20   example, of the Slaymakers.

21             And in structuring our discovery -- and,

22   frankly, I'm a plaintiff's lawyer.  I'm not interested

23   in taking depositions that aren't going to help me or

24   that cost me a lot of money to travel across the country

25   to find out stuff I already know.

1    So part of it is that some of these other

2  depositions are lower on my list and may end up

3  disappearing.  We're each entitled to 30 and if I got

4  what, frankly, I needed from the first 15 I took, I

5  probably wouldn't take those other 15 and take my risks

6  if they showed up at trial.

7         THE COURT:  Okay.  That's a sensible argument.

8         MR. GRYGIEL:  And I think that's a -- frankly,

9  a very compelling argument on our side for why we should

10  be able to proceed in the way that I'm hoping I can

11  convince your Honor we should be able to proceed.

12         I've got some other suggestions of names.

13         THE COURT:  Okay.

14         MR. GRYGIEL:  And they are lower-level

15  employees.

16         Victoria Ryder; the security chief whom

17  Mr. Felmly said today was okay to depose, so that's not

18  an issue anymore, George Pangakis; Theresa Ferns, she's

19  in the counseling center at the school, the Clark House;

20  and Colin Callahan.  And those are all people we would

21  also like to depose in these earlier days.

22         THE COURT:  Okay.  Your response to those,

23  Mr. Felmly?

24         MR. FELMLY:  Yeah.  Theresa Ferns is the only

25  person on that list that would be in our group of six.

1   The other three -- Ryder, the security chief, and Colin

2   Callahan, you know, I think we can make that work.

3                THE COURT:  Okay.  All right.

4                MR. GRYGIEL:  We've got some others, your

5   Honor --

6                THE COURT:  Okay.

7                MR. GRYGIEL:  -- since we do want to progress

8   this case and I know Mr. Felmly does, too.  We talked

9   about this.

10               School witnesses who are former students, for

11  example, the Slaymakers.  They don't seem to be --

12  that's the group of students that were involved in some

13  of the activities.  They're lower on the list for us.

14  We -- I'm sure we can work out scheduling those.  I

15  don't think there's any objection to that.

16               Lucy Hodder is a former trustee.  Former

17  trustee.  We would like to have her in these earlier

18  days.

19               And two other students by name; I think this

20  is appropriate, since I think they're both past the age

21  of minority now, Gus Hirschfeld and Hannah Hirschfeld.

22  They were students at the school and they are the

23  children of the rector.

24               And those are other witnesses that we think we

25  should be able to structure our depositions in a way

1    that makes sense for our case, both for efficiency and

2    for, we hope, getting our burden of proof shouldered

3    earlier on rather than later on.

4              And we also think, your Honor, to be blunt, to

5    bring up a point Mr. Felmly made earlier when he said we

6    tried to resolve the case, I think some of these

7    depositions early might help prosper an extrajudicial

8    resolution.  I might be wrong about that, but they may.

9    Maybe I'm wrong about what I think about the case and

10   Mr. Felmly's right or vice versa.  Some of these

11   depositions may help us with that earlier on and save us

12   all a lot of time and work.

13             THE COURT:  Okay.  Are you willing to put off

14   the depositions of the rector and the current trustees

15   for 90 days while we do some of these other matters and

16   then revisit the issue after 90 days?

17             MR. GRYGIEL:  Yes, your Honor.

18             THE COURT:  Okay.  So, Mr. Felmly, what I'm

19   really hearing is the remaining points of disagreement,

20   if we adopt this concept of let's -- let's agree to put

21   off certain depositions for 90 days, it's just a

22   disagreement about which people should go into that

23   category of 90-day people.

24             And he's agreeable as to the ones that are

25   current high-level management people and where I think

1    we have a disagreement is with respect to former

2    high-level managers that he would like to depose within

3    this 90-day period.

4            Is there anything else you want to say about

5    those former 90-day -- former managers he wants to

6    depose and you want put into that post-90-day period and

7    anything else you want to say in response to what he

8    said?

9            MR. FELMLY:  Yeah, two things.

10           Ms. Hodder is not actually a former trustee,

11   although she's on a leave of absence.  And so she is a

12   current trustee.  She is in the group of six.  She was

13   one of the six.  She is somebody that we believe should

14   be in the group that's deferred.

15           And, in fact, if they're going to add other

16   trustees, I mean, our view is that trustees should be in

17   that group, although Waterbury was new to us today.

18           As to Ryder, the security chief, Colin

19   Callahan, fine.

20           The two young people that are the children of

21   the rector which they mention, those folks raise

22   different issues other than this problem with the

23   criminal investigation.  We could notice those

24   depositions, but there will be issues there as to the

25   scope of that, privacy issues, but I don't think it's

1    the same problem we're faced with today in terms of

2    categorization, your Honor.  I'm not saying they

3    categorically shouldn't be deposed, but there will be

4    issues and they may or may not be --

5                    THE COURT:  They're not minors?

6                    MR. FELMLY:  No, at this point they're

7    probably not.

8                    THE COURT:  Okay.

9                    MR. FELMLY:  But they -- they were former

10   students at the school and -- it depends, I suppose, on

11   what the scope of what they want to ask them about, but

12   I'm -- what I'm saying to you is we're not saying they

13   can't be considered for depositions, but I don't want to

14   forget to mention there may well be issues in terms of

15   what the scope of the expected testimony is.

16                    And so I guess we're leaving it which is the

17   six people that are in that category as to what -- I've

18   told you what I think about Chad Green and Jada Hebra

19   who are former, but they are recently former and they're

20   right in the middle of this and I think they're key

21   people that should be in this group notwithstanding the

22   fact they're not currently drawing a paycheck.

23                    THE COURT:  All right.  Okay.

24                    So let me just -- let me just explain my

25   position.  If you have a last word, I'll hear you on it,

1    but --

2             MR. GRYGIEL:  I simply had a question to the

3    Court.  I wanted to make sure that I understood who the

4    six are.

5             THE COURT:  Yeah.  Well, I'm not -- I'm going

6    to try to do this without naming names for you.  I'm

7    going to try to describe it in a categorical way.

8             So here's my proposed order in this case.  My

9    proposed order is that we allow deposition discovery to

10   occur over the next 90 days for any individual that

11   either party wants to depose except for those people who

12   are to be put into the category of not subject to

13   deposition during the first 90 days and whose

14   depositions we will revisit, if necessary, at a

15   subsequent case management conference to be scheduled at

16   some point after the 90-day period.

17            It seems to me that there is ample work for

18   you to do in the next 90 days, most of which can be done

19   by agreement; that includes depositions that the

20   defendant wants to take and depositions that the

21   plaintiff wants to take.

22            So I am sympathetic to the argument and

23   believe it is appropriate to defer the deposition of

24   current management employees who the plaintiff wants to

25   depose, including trustees.

1          To the extent a trustee is on a leave of

2    absence and is not engaged in active management, I don't

3    believe that trustee falls within that particular group.

4          So -- I am not sympathetic to the argument

5    that as to a former employee, whether in senior

6    management or not, that that person's deposition should

7    necessarily be postponed.  I understand it'll be

8    difficult and I understand that puts pressure on the

9    defendant to the extent that those depositions will be

10   very important to the outcome of the case, but I believe

11   that that isn't a sufficient reason to justify

12   postponing their deposition, nor do I believe it's a

13   sufficient reason that that person may at some point be

14   called to respond to either an interview or to provide

15   testimony in connection with a criminal investigation.

16   These things happen.

17          If those people are represented by separate

18   counsel and they present a particular concern with the

19   scheduling of their depositions, I think we have to be

20   open to hearing what that concern is and I would expect

21   you as plaintiffs' counsel to make every effort to reach

22   agreement with counsel regarding the scheduling of that

23   deposition.

24          If you cannot and you insist on conducting

25   their deposition within the 90-day period, you can

1    notice it up.  And if I get a request from -- for

2    protection from counsel, I will schedule a subsequent

3    hearing and evaluate that request.

4         But I want to urge you to please be sensitive

5    to concerns.  It is certainly -- if you put yourself in

6    the position of a former employee who is reading in the

7    newspaper that there is a criminal investigation that

8    may encompass actions that they undertook that that

9    would be a stressful thing, for them to be in that

10   position.  And I think we have to be mindful of that and

11   you have to be willing to be somewhat flexible about it.

12        So what I'm putting in the category of defer

13   for 90 days are any senior-level manager that the

14   plaintiff -- that the defendant has identified as

15   someone that they had proposed not to depose, which

16   includes not just employees, but also trustees who are

17   active trustees.

18        As to others, I am not going to defer their

19   deposition and I will leave it to you and Mr. Felmly to

20   agree on a reasonable schedule as to those people who I

21   have not put in that post-90-day list that allows him to

22   do discovery that he wants to do and you to do discovery

23   that you want to do.

24        In reaching this conclusion, I do find

25   persuasive your argument and I'm going to try to hold

1    you to it; that if you take depositions of senior-level

2    former managers that you give active consideration to

3    whether that eliminates the need to take depositions of

4    others who we wouldn't necessarily want to

5    inconvenience, former students and so forth.

6                I -- I'm assuming you made that statement to

7    me in good faith.

8                MR. GRYGIEL:  Yes, your Honor.

9                THE COURT:  I can count on you to try to

10   exercise that good faith judgment and limit the number

11   of depositions that need to be taken.

12               So I'm hopeful that by allowing you to do some

13   of these former employee depositions that it may, in

14   fact, lessen the number of depositions that'll have to

15   be taken in the case.

16               So to the extent there's a motion to modify

17   the schedule, I am granting it in part and denying it in

18   part.  I'm identifying a stay of -- I'm identifying a

19   group of people by category whose depositions I'm

20   instructing the parties cannot be taken for at least 90

21   days and until further order of the Court.

22               I'm instructing the parties to meet and confer

23   with respect -- about the scheduling of those

24   depositions prior to the expiration of this 90-day

25   period and if the parties cannot reach agreement

1    regarding those remaining depositions that they should

2    request a further status conference with the Court and

3    I'll hear you with respect to specific matters at that

4    time.

5              Mr. Felmly, I instruct you to notify those

6    former employees who have separate counsel that the

7    Court is willing to entertain any concerns that they

8    have.  If they have specific needs for protection, they

9    should engage, meet, and confer with the counsel to this

10   case, if they can't reach agreement, they can seek

11   protection from the Court.  Okay?

12             MR. FELMLY:  I'm assuming in light of this

13   that the trial dates currently on your calendar for

14   March is not --

15             THE COURT:  The trial date seems unrealistic

16   to me, given that.  I want to move expeditiously.  I can

17   assure you that we won't be able to reach the March

18   deadline.  We're going to have to reschedule it.  But

19   I'm not sure it makes sense to, you know, put on a May

20   deadline or something.

21             MR. FELMLY:  We agree.

22             THE COURT:  I think it's better to see you in

23   90 days, see where we are, see if we're in a position by

24   agreement to identify a trial date.

25             Is that sensible to people.

1          MR. FELMLY:  It's sensible, your Honor.

2          MR. GRYGIEL:  Makes sense, your Honor.

3          THE COURT:  All right.  So the case will be

4    removed from the trial list by agreement and to be

5    rescheduled at a further status conference.

6          And I don't -- I don't want my comments to be

7    mistaken in any way or misconstrued or -- I'm not in any

8    way to convey anything other than the message that I

9    respect counsel in this case, the work that you're

10   doing.

11         I know -- I know people on both sides of the

12   case well and have a high regard for them and I -- and

13   I'm convinced that you can --- have been and will

14   continue to work in a collegial way to revolve these

15   disputes.

16         Sometimes I have to push a little bit to get

17   people to do what I want and I might describe things in

18   stronger terms than I actually intend.  I really do have

19   a high regard for the lawyers on both sides of the case

20   and I'm confident that you'll be able to take my general

21   guidance and put it into action.

22         And, you know, I remain willing to meet with

23   you as we move forward.  And we will meet again if for

24   no other reason than to pick a trial date.  But I'm not

25   intending in any way to be critical of the work that

1   you're doing.  This is a difficult case.  It raises a

2   lot of challenging problems for lawyers.  So I

3   understand and respect that.

4          So is there -- so there was a -- a motion for

5   a conference to modify the scheduling order.  I have

6   held the conference.  So to that extent you were seeking

7   that relief, I've granted it.

8          To the extent you seek a modification, I've

9   removed the case from the trial list, identified a -- by

10  category certain people whose depositions will not be

11  taken within the next 90 days.

12         I've set a -- did imposed a meet-and-confer

13  duty on you both with respect to depositions of those

14  people.

15         At some point prior to the expiration of the

16  90 day period I've told you that I'll hold another

17  conference with you to discuss the rescheduling of the

18  trial date and to resolve any remaining deposition

19  questions.

20         And I've expressed a willingness to hear from

21  those witnesses who are to be deposed who have counsel

22  about any specific concerns that they may have about the

23  scheduling of their deposition.

24         Is there anything else that I can do for you

25  today?

1              MR. FELMLY:  No.

2              MR. GRYGIEL:  Nothing your Honor.  Thank you.

3              MR. FELMLY:  I appreciate your help, your

4    Honor.

5              MR. GRYGIEL:  Thank you, your Honor.

6              (Proceedings concluded at 3:05 p.m.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
              C E R T I F I C A T E


          I, Liza W. Dubois, do hereby certify that

the foregoing transcript is a true and accurate

transcription of the within proceedings, to the best of

my knowledge, skill, ability and belief.



Submitted: 10/3/17
```

Liza Dubois, RMR, CRR
Licensed Court Reporter No. 104
State of New Hampshire